## Manning, Commissioner of Finance, v. Sims et al.

August 13, 1948.

Rehearing Denied October 15, 1948.

588

Hubert Meredith for appellant.

Herman G. Handmaker, Samuel M. Rosenstein and Charles I. Dawson for appellees.

Charles I. Dawson, Thomas S. Dawson and A. E. Funk, Attorney General, for intervening petitioner.

OPINION OF THE COURT BY SPECIAL CHIEF JUSTICE LEARY—Affirming.

This controversy requires the court to measure certain provisions of House Bill 254 of the 1948 General Assembly of Kentucky (hereinafter referred to as the Act) against the limitations of the Kentucky Constitution (particularly, Sections 3, 51, 58, 59, 60, 235, and 246) and to declare whether or not there is a conflict.

It is the first three sections of the Act which form the arena of debate. The full text of these three sections are appended to this opinion. Other sections of the Act, which create and replenish the fund from which payments, if permissible, are to be made are not in controversy.

The Act has been called the Judicial Expense Act and its title denominates it as "An Act providing for the payment of certain expenses to the Judges and Commissioners of the Court of Appeals and the circuit judges of the Commonwealth."

As will be observed from a reading of the title and the appended sections, the Act deals with the entire judi-

ciary of the Commonwealth above the level of magistrates; county and quarterly courts. Section 1 of the Act deals with circuit judges and provides for the monthly payment from the State Treasury of "the sum of $100.00, which sum is hereby declared to be the equivalent of the minimum sum that each (circuit) judge will expend each month, in the performance of his official duties, for postage, telephone service, supplies, stationery, stenographic assistance, law clerk hire, and books and periodicals."

As it relates to Judges of the Court of Appeals and Commissioners of the Court of Appeals, the Act (Sec. 2) deals alternatively. If the Judge or Commissioner "continues, during his term of office, to actually reside at his place of legal residence in the district from which he was elected or appointed he shall be paid out of the State Treasury, his actual and necessary traveling expenses in going to and returning from the State Capital, and his actual and necessary food and lodging expenses for each day that he remains at the State Capital in the performance of his official duties." But, if a Judge or Commissioner of the Court of Appeals "in order to facilitate the work of the court, and to avoid the expense, delay and inconvenience of frequent travel to and from the place of his legal residence to the State Capital, shall establish a temporary place of abode at the State Capital, or in a place convenient thereto, he shall be paid out of the State Treasury, each month, the sum of $150.00 which is hereby declared to be the reasonable equivalent of the travel, food and lodging expenses which such judge would incur, in the performance of his official duties, if compelled to travel to and from the place of his legal residence."

Acting pursuant to the provisions of Section 3 of the Act, the Judges and Commissioners of the Court of Appeals certified to the appellant (defendant below) Commissioner of Finance, that each of them had established a temporary place of abode at the State Capital or at a place convenient thereto, which was not their legal residence and requested payment according to the terms of the Act. The Commissioner of Finance, doubtful of the validity of the Act, refused to make the payments provided for therein without judicial determination that the Act was valid.

The Judges* and Commissioners of the Court of Appeals (and two circuit judges suing in a representative capacity) brought suit in the Franklin Circuit Court alleging the passage of the Act, the provisions thereof, the legal residence of the judges and Commissioners of the Court of Appeals (none of which were the State Capital), the establishment by the Judges and Commissioners of temporary places of abode at the State Capital or in places convenient thereto, the request made upon the Commissioner of Finance and his refusal to act in accordance with the provisions of the Act. The Attorney General of Kentucky intervened in behalf of the Judges and alleged that the Act in question did not violate any of the provisions of the Constitution of Kentucky. The Attorney General has filed a brief in this court in support of the Act.

The court was asked to declare that the Act was constitutional, to permit the plaintiff circuit judges to sue on behalf of all circuit judges in Kentucky similarly situated, and to declare that the Commissioner of Finance has power and authority to issue his warrants against the fund and in the amounts provided in the Act.

Special counsel was engaged to represent the Commissioner of Finance. In the court below a demurrer was filed to the petition and, without waiving the demurrer an answer was filed pleading the unconstitutionality of the Act. Appellees (plaintiffs below) demurred to the answer.

The regular judge of the circuit court, being a party to the action, disqualified himself as did the regular judges of the Court of Appeals for the same reason. The Honorable Leslie W. Morris of the Franklin County Bar, was designated as Special Judge in the court below. He adjudged the Act to be "valid and constitutional" and directed the Commissioner of Finance to issue his warrants upon the Treasurer of the Commonwealth of Kentucky according to the terms of the Act. The demurrer to the petition was overruled. The demurrer to the answer was sustained. The defendant (appellant here) declined to plead further and an appeal was prosecuted to this court.

---

*Judge Siler does not appear as a party plaintiff.

At the very outset it is appropriate that we announce our recognition of and adherence to certain general and well settled rules which must be observed when the constitutionality of an Act of the Legislature is drawn into question. It is essential that the sharp separation of the powers of government be preserved carefully by the courts. Those which are judicial must not be permitted to encroach upon those which are legislative. Section 27, Constitution of Kentucky.

The consistent rule of construction is well stated in Bowman v. Frost, 289 Ky. 826, 158 S. W. 2d 945, 946, wherein it is said:

"In passing upon the constitutionality of legislative acts, courts are guided by certain well-established rules. One of these rules is that when the power of the Legislature to enact a law is called in question, the court should proceed with the greatest possible caution and should never declare an act invalid until after every doubt has been resolved in its favor."

Our courts "have been sensitive to the rule that an Act should be held valid unless it clearly offends the limitations and prohibitions of the constitution." "The burden is upon one who questions the validity of an Act to sustain his contentions." Johnson, Governor, v. Commonwealth, ex rel. Meredith, 291 Ky. 829, 165 S. W. 2d 820, 823. Many other cases, including Kerr v. City of Louisville, 271 Ky. 335, 111 S. W. 2d 1046, Talbott v. Thomas, 286 Ky. 786, 151 S. W. 2d 1, are to the same effect.

Another rule which is uniformly invoked in statutory construction is that the propriety, wisdom and expediency of legislation is exclusively a legislative question. Craig v. O'Rear, 199 Ky. 553, 251 S. W. 828.

Against this general concept of constitutional law which is announced more often than it is followed, let us proceed to measure the provisions of the Act against Sections 235 and 246 of the Constitution for it is here that the Act meets its severest test.

Section 235, in pertinent part, provides:

"The salaries of public officers shall not be changed during the terms for which they were elected * * *."

Section 246, in pertinent part, provides:

"No public officer, except the Governor, shall receive more than five thousand dollars per annum, as compensation for official services * * *."

It is apparent that if the Act accomplishes a change *in salaries* for the judges Section 235 would be violated. If the Act works an increase *in compensation* it would transgress Section 246 as respects the Judges who now receive $5000 per annum as compensation for official services. Appellant, to sustain the burden cast upon him, argues that the salary or compensation of the incumbent judges was burdened with all the expenses of the office at the time each of them began his term of office; that the Act relieves the incumbents of certain expenses connected with their office and necessarily increases the "take home" pay of each of them which, in turn, is an increase in salary or compensation.

In our view, the argument will not stand resort to the authorities. The prohibition against a change of salary or compensation during the term of a public officer is a familiar one in state constitutions. Unless the contrary is clearly expressed, it is consistently held that the allowance of reasonable expenses incurred in the discharge of the official duties of an office is neither salary, compensation nor an emolument of the office within the purview of a constitutional prohibition against a change in compensation during the term. Taxpayers League, etc., v. John McPherson, et al., 49 Wyo. 251, 54 P. 2d 897, 106 A. L. R. 767; State ex rel. Weldon v. Thomason, 142 Tenn. 527, 221 S. W. 491; Milwaukee County v. Halsey, 149 Wisc. 82, 136 N. W. 139; Scharrenbroich v. Lewis & Clark County, 33 Mont. 250, 83 P. 482; Clark v. Board of County Commissioners, 64 S. D. 417, 267 N. W. 138.

The weight of authority is stated in 43 Am. Jur. Sec. 371, pg. 155, as follows:

"Generally, statutory compensation to a public officer for expenses necessarily incurred in performing the duties of his office is neither salary nor an emolument of the office and is not within a prohibition against increasing or otherwise changing his compensation during his term of office, or against payment to him of any fees

or perquisites in addition to his salary, or against withholding any portion of the officers salary.''

Frequently, in recognition of changing economic conditions, the Legislature deems it sensible to allow, increase or diminish expense allowances incident to the performance of the duties of an office. For years in Kentucky the expense of a state officer or employee ''incident to traveling in his own motor vehicle'' in the discharge of his official duties has been ''not (to) exceed *five* cents per mile.'' KRS 44.060. The 1948 General Assembly of Kentucky, recognizing that ''motor vehicles, accessories, repairs, gasoline, and oil have increased in price,'' enacted a law providing that ''The amount allowed for such expenses shall be fixed by the Commissioner of Finance not to exceed seven cents per mile.'' H. B. 308, Eff. Mar. 24, 1948.

We do not apprehend that such legislation violates either Section 235 or 246 of the Constitution. True, the ''take home'' pay—the gross receipts—of the officer or employee may be increased or diminished but the Constitution deals with salary or compensation which is not changed by the allowance, increase or decrease in expenses incident to the performance of official duties.

Appellant argues that Estill County v. Noland, 301 Ky. 204, 191 S. W. 2d 223, second appeal, 304 Ky. 870, 202 S. W. 2d 376, Rhoads, et al. v. Miller, Commissioner 298 Ky. 346, 182 S. W. 2d 248, and Frizzell v. Holmes, 131 Ky. 373, 115 S. W. 246, militate against the conclusion which we have reached but, when analyzed, it will be seen that these cases are not necessarily in point.

Estill County v. Noland, supra (301 Ky. 204, 191 S. W. 2d 224), denied the right of a Fiscal Court to allow a County Judge ''$25.00 each month for traveling expenses,'' primarily, because ''There is no legal or statutory authority for such a blanket allowance * * *.'' In the instant case there is no lack of statutory authority.

Rhoads et al. v. Miller, Commissioner, supra (298 Ky. 346, 182 S. W. 2d 250), was a case in which the 1944 General Assembly, by a general law, raised certain allowances to *future* members of the General Assembly from twenty dollars to fifty dollars but ''in lieu of the (same) allowances,'' it, by resolution, provided that

"each member of the *present* General Assembly, shall be entitled to the sum of three hundred dollars * * *." Acts 1944, c. 194, The court correctly held:

"But we are of the opinion that the General Assembly, by specifically enacting the following Statute fixing the expense allowance and compensation of *future* members, has made unmistakably clear its intent that all but $50 of the expense allowance to each member should be retained by him as compensation."

The vice of the contested legislation in the Rhoads case was apparent on its face. The court properly condemned it.

Frizzell v. Holmes, supra, involved the constitutionality of an Act (Acts 1908, p. 116, Ch. 44, Eff. Mar. 23, 1908) which required the Fiscal Courts of the counties to appropriate "a sum sufficient to purchase labor and materials necessary to keep the public property * * *, including the jailer's residence, if owned by the county, in repair and in clean, comfortable and presentable condition, and heat and light the same * * *."

Before the enactment of the 1908 Act the statute provided that "The jailer of each county shall be superintendent of the public square, court-house, * * * and other public county buildings * * *." Ky. St. 1903, sec. 3948.

The 1908 Act was assailed on the ground that it increased the compensation of incumbent jailers in violation of Section 161 of the Constitution. The court held that so much of the 1908 Act was unconstitutional (as applied to incumbent jailers) as compensated them for duties which they were required to do without charge to the county under laws in force when they were elected.

Our conclusion is not at odds with the conclusion reached in the Frizzell case. We are aware of no law in force when the incumbent judges were elected which required them to absorb the expenses of their office without charge to the Commonwealth, nor are we aware of any law which requires them to *continue* to absorb such expenses. Legal considerations in the Frizzell case are different from those in the case under consideration and the conclusions reached are consistent.

We hold, therefore, that in the absence of specific constitutional or statutory prohibition (and we have found none) the allowance by the Legislature of expenses incurred by the judges in the discharge of their official duties is neither salary, compensation nor an emolument of their office within the meaning of Sections 235 and 246.

We come now to consider the propriety of the Act in fixing a lump sum equivalent of actual expenses. In the case of circuit judges the sum is $100 per month "which sum is hereby declared to be the equivalent of the minimum sum that each judge will expend each month, in the performance of his official duties, for postage, telephone service, supplies, stationery, stenographic assistance, law clerk hire, and books and periodicals." In the case of Judges and Commissioners of the Court of Appeals who "shall establish a temporary place of abode in the State Capital, or at a place convenient thereto" the lump sum is $150 per month "which is hereby declared to be the reasonable equivalent of the travel, food and lodging expenses which such judge would incur, in the performance of his official duties, if compelled to travel to and from the place of his legal residence."

The scope of judicial examination into the action of the Legislature in making a lump sum appropriation in lieu of actual expenses incurred is—and should be—rather narrow. The legislative declaration of the nature and purposes of the allowance is binding upon the courts, and will be upheld, unless from the Act itself and without extraneous aid, the court can say without hesitation that the legislation is, in fact and in truth, a device to increase compensation. Compare Rhoads v. Miller, Commissioner, supra, State, ex rel. Weldon, v. Thomason, supra, Peay v. Noland, 157 Tenn. 222, 7 S. W. 2d 815, 60 A. L. R. 408.

We are now brought face to face with the South Dakota cases of McCoy v. Handlin, 35 S. D. 487, 153 N. W. 361, L. R. A. 1915E, 858, Ann. Cas. 1917A, 1046, and State, ex rel. Payne v. Reeves, 44 S. D. 568, 184 N. W 993. These cases are squarely in point. Indeed the Kentucky Act probably was motivated by the South

Dakota opinions. It is clear that this court must either follow the South Dakota opinions or ignore them.

In McCoy v. Handlin, supra (35 S. Dak. 487, 153 N. W. 373), the South Dakota court had before it a statute, Laws S. D. 1911, c. 239, which provided as follows:

"That whenever a judge of the Supreme Court, whose legal residence shall be at some place other than the state capital shall have changed his place of actual residence to the capital, there shall be paid to such judge in consideration of expenses incident to removal to the capital, the increased expenses of living at a place other than his legal residence, the expenses of traveling to and from such legal ˙residence the fixed sum of fifty dollars for each month payable upon the certified vouchers of such judge filed in the office of the state auditor.''

The Constitution of South Dakota, like the Constitution of Kentucky, prohibits an increase in the salaries of public officers over the amount fixed by the constitution. After determining first that ''it should be clear that it is universally held that allowance and expenses incident to the discharge of the duties of office is not an increase in salary, a perquisite, nor an emolument of office,'' (35 S. D. 487, 153 N. W. 373), the court continued:

"The Constitution of this state, as well as the Constitutions of nearly all the other states, contains no provision requiring the judges of the appellate court to reside at the capital. In many states the judges do not reside at the capital; in one at least they are required to reside in the district from which elected. The territorial Supreme Court of Dakota territory was composed of the several district judges who held stated terms of appellate court at the capital, and were engaged at other times in the trial of cases in the several districts. The framers of our Constitution knew of these facts and undoubtedly intentionally so worded the Constitution as to allow the judges of this court to retain their actual, as they expressly allowed them to retain their legal, residences at their former homes. The Constitution merely requires that they hold two terms of court at the capital. It would therefore be entirely proper and legal for plaintiff to have retained his actual residence at Aberdeen, the place of his legal residence, just as many of the judges in other states live away from

the capital. If the judges of this court continued to reside at the places of their legal residence, no question, under any authority, could be raised as to the constitutionality of a law which appropriated money to reimburse them for the actual expenses incident to their travel to and from, and for their hotel bills while at, the capital. Such an allowance would leave to the judges clear, as compensation for their official services, the salary provided by law, and no one could, and we apprehend no one would, say that they received perquisites or emoluments. In view of the number of trips that would have to be made to the capital and the number of days that would have to be spent there, it is clear that the aggregate of such expenses would be in excess of $600 per year for each judge so living away from the capital. Let us suppose that the several judges of this court were living at the places of their legal residence, and the Legislature were asked to enact legislation to reimburse them for their actual expenses incurred in going to and remaining at the capital, which expenses could, from their nature, be itemized. Is it possible that such Legislature could not say to the judges of this court:

" 'We believe that, owing to the fact that the duties of your office require your presence at the capital a considerable portion of the time, you can better discharge the duties of such office if you will reside at the capital; hence, in the furtherance of a sound public policy, we ask you to make your actual residence at the capital, and, in order that you may do so without financial loss to you, we will, in place of paying your expenses of traveling to and boarding at the capital, while living at your places of legal residence, allow you such a sum as will cover the extra expense incident to your moving to and living at the capital.'

"Would not the allowance in the one case be as much an allowance for expenses, and in no sense a perquisite or emolument, as in the other? Certainly it would; the only difference being that in the one case the law could provide for the expenses to be itemized and the exact amount paid, while in the other, from the very nature of things, it would be necessary for the Legislature to estimate the reasonable and probable amount of such expenses and appropriate a lump sum therefor. If

the Legislature could pass such a law to encourage the judges to move to the capital, for the same reasons it certainly could pass one where, prior thereto, the judges had voluntarily moved to the capital. This they did, and no one had ever claimed that the allowance made was greater than the amount of such expenses, or that it is greater than would be the expense incident to the judges coming to and remaining at the capital in the discharge of official duties if they lived at the places of their legal residences. The one allowance is just as clearly for expenses as would be the other, and is therefore as clearly permissible under the Constitution as the other. The Legislature had the right, if deemed best as a matter of public policy, to enact the law which it did enact, provided it did not make the allowance greater than the expenses it was designed to cover; and it was for such Legislature to determine a reasonable and proper amount. It is clear that the Legislature did not intend, in the enactment of such legislation, to increase the salaries of the judges, or to grant them any perquisites or emoluments for the discharge of their duties, but only intended to assure them, in so far as possible, that for the performance of their official duties alone, and not for the performance of such duties and the payment of the expenses incident thereto, they should receive the salaries provided by law for the performance of such duties. The Legislature had a right, in determining the advisability of this legislation, to take into account what would have been the probable allowance necessary to meet the expenses for which the judges would have been justly entitled to be reimbursed, if they had remained at their legal residences, and also to take into account the estimated amount of additional expense incident to moving to and living at the capital; so long as it has not exceeded either of these sums, there is left no ground to claim that it has increased their salaries. The mere fact that the Legislature, in the exercise of its discretion, has seen fit to estimate, in advance, the amount of such expenses, and to limit the same to the sum of $50 per month, does not transform the expense allowance into an increase of salary. The only purpose of the act was to enable the judges to retain for their own proper use, and for the support of their families, the salaries allowed them for their official

services, instead of paying out such salaries for expenses that should properly be paid by the state.''

Six years later the Legislature increased the allowance for judges in South Dakota from fifty dollars per month to one hundred and fifty dollars per month, and again the question reached the highest court of that state in Payne v. Reeves, supra (44 S. Dak. 568, 184 N. W. 999), from which is taken the following language:

''Whether the expense allowance of $150 per month to each judge of the Supreme Court is or is not excessive is a question depending to some extent upon the standard of living of the judges of the Supreme Court. The station or position in life of the party whose expenses are under consideration should be considered, and the Legislature in enacting the law now under consideration was dealing with the question of the expense of judges of the Supreme Court. Those judges are entitled under the Constitution to the salaries fixed by the Constitution, and they are entitled to such allowances for expenses as will enable them to live in a manner becoming the judges of the Supreme Court of a great state. The Legislators may well have thought it the part of wisdom to make provision for the expenses of the judges in such an amount that it would not be necessary for them to take from their inadequate salaries the money necessary to pay such expenses. This court will not presume that the matter of the amount and the necessity for these expenses was not made the subject of proper investigation by the Legislature, and its determination as to the facts cannot, under any principle of constitutional law, be disturbed by this court unless the amount allowed is so plainly and palpably in excess of any amount of expenses which could possibly be incurred by the judges in the discharge of their official duties as to show without evidence or argument, beyond all reasonable doubt, that the Legislature intended to increase the salary of the judges and not to provide for the payment of expenses incident to the discharge of official duties. The question is not what this court might conclude would be a reasonable amount to allow the judges for expenses incurred in the discharge of their official duties, if it were authorized to fix such allowance, but whether the amount fixed by the Legislature is plainly

and palpably in excess of any amount which the judges could possibly incur. In other words, this court, to sustain the contention of the learned Attorney General, must take judicial knowledge of the fact, if it be a fact, that $150 per month allowed to each of the judges as expenses is in excess of any amount that could possibly be incurred. It is the action of the Legislature—the chosen representatives of the people—which is under investigation in this proceeding, and not the action of the Supreme Court or its judges.''

Provisions of the South Dakota Statutes and Constitution closely parallel those of Kentucky. Neither the Constitution nor the Statutes of Kentucky require the Judges or Commissioners of the Court of Appeals to reside at the capital. Indeed, the Judges of the Court of Appeals must reside ''in the district in which he is elected two years next preceding his election'' (Sec. 114, Constitution), while ''the Court of Appeals shall be held at the seat of government'' (Sec. 111, Constitution). In Kentucky, as in South Dakota, it would be ''entirely proper and legal'' for the Judges and Commissioners to retain their actual residences in the districts from which they are elected or appointed. If they did so we think ''no question, under any authority, could be raised as to the constitutionality of a law which appropriated money to reimburse them for the actual expenses incident to their travel to and from, and for their hotel bills while, at the capital.''

If the Legislature may reimburse the judges for actual expenses may it, in lieu of actual expenses, make a monthly lump sum appropriation? We think so. The rationale of the South Dakota cases finds support in Coleman, Auditor, v. Mulligan, 234 Ky. 691, 28 S. W. 2d 980, 981, where a mileage allowance for conveying prisoners to the penitentiary was under attack. The Court of Appeals of Kentucky, citing many instances of lump sum allowances in lieu of expenses in the statutory law of Kentucky, said:

''It will be observed that the statute only allows the officer the actual necessary expenses for said lodging and transporting the prisoners. He must pay his own expenses and the expense of his guards, and the only return that is made to him is the allowance of ten

cents a mile. This allowance of ten cents a mile is a legislative estimate of the reasonable expenses of the officer. There are always incidental expenses to every trip. The officer and the guard must have food, and not unfrequently must hire a vehicle, such as busses or cars. The Legislature evidently did not intend all these things to be left unpaid, and, as the expenses might vary from time to time, it fixed ten cents a mile as the gross allowance that might be paid to cover all these expenses of the officers and the guards. There are a number of similar statutes. The circuit judge by the Act of 1926 (c. 31), when engaged outside of his district, is allowed, in addition to his salary, his actual expenses not exceeding $10 a day, and by the Act of 1928, c. 20, the circuit judges, as members of the judicial council, have an allowance of $10 a day for expenses. Both of these acts have been upheld. Again, by section 1098, Kentucky Statutes, the clerks of circuit courts, on a change of venue, are allowed ten cents a mile for the expenses of travel. The members of the Legislature are allowed mileage in addition to their pay. The electors for President and Vice President receive the same per diem and mileage as is allowed to a member of the Legislature. Kentucky Statutes, sec. 343. In all of these cases the mileage is simply an amount estimated by the Legislature to cover the officers' expenses, and we see no reason why the same rule should not be applied to section 361, Kentucky Statutes, above quoted.''

We consider the South Dakota opinions to contain sound and salutary principles of constitutional law. We approve the principles therein announced. We believe we leave to the Courts adequate room to cope with any legislative device calculated to increase the salary or compensation of public officers without encroaching upon that sphere of governmental activity which, under constitutional government, should be left to the legislative branch of the government.

Tested by the principles which have been approved, it follows that we are not prepared to presume that the legislative estimates are ''so plainly and palpably in excess of any amount of expenses which could possibly be incurred by the judges in the discharge of their official duties as to show without evidence or argument, beyond all reasonable doubt, that the Legislature intended to

increase the salary of the judges and to provide for the payment of expenses incident to the discharge of their official duties.''

We are not unmindful of a line of cases, Dixon v. Shaw, 122 Okl. 211, 253 P. 500, 50 A. L. R. 1232; Gallarno v. Long, 214 Iowa 805, 243 N. W. 719; Ferris v. Aten, Auditor, 318 Mich. 528, 28 N. W. 2d 899, which hold that there is a distinction between official expenses and personal expenses. The gist of these cases seems to be that the allowance of official expenses does not amount to an increase in compensation, while the allowance of personal expenses is, in fact, an increase in compensation. Nothing we have said in this opinion will, or is intended to, preclude judicial inquiry into expense allowances of public officers and if it appears that allowances exceed official expenses or reasonable estimates thereof, the courts are free to condemn them. The allowances here under consideration and the legislative estimates thereof are, in our view, reasonable, and involve no element of personal expense.

It is claimed that the Act is a revision, amendment or extension of KRS 45.180 which deals generally with the expense accounts of state officers and employees and, consequently, it is claimed, that KRS 45.180 should have been reenacted and published at length in the Act in accordance with the provisions of Sec. 51 of the Constitution. We believe that the Act is not a revision, amendment or extension, but is new legislation complete in itself without reference to other laws.

It is said in Board of Penitentiary Commissioners v. Spencer, 159 Ky. 255, 166 S. W. 1017, 1023;

"When the act does not purport to be an amendment to an existing law, but a new act, it is not necessary to set out or re-publish any part of any old law that may be changed or repealed by the new law.''

It is also claimed that the Act violates Sections 59 and 60 of the Constitution because (a) it is special legislation, and (b) because it becomes a special or local Act "by the repeal in part of a general act.''

This argument proceeds upon the theory that the Act is local and special in its application to the judges and exempts them from the provisions of the general law

relating to expense accounts of state officers and employees. Legislation which applies to and operates uniformly upon all members of any class of persons requiring legislation peculiar to themselves in the matter covered by the legislation is general and not special or local. Jefferson County v. Cole, et al., 204 Ky. 27, 263 S. W. 1114. Classification is within the power of the legislative branch of the government and so long as classification is not manifestly arbitrary and unjust the courts will not disturb it. Stevenson v. Hardin, 238 Ky. 600, 38 S. W. 2d 462; Johnson, Governor, v. Commonwealth, 291 Ky. 829, 165 S. W. 2d 820; Shaw v. Fox, 246 Ky. 342, 55 S. W. 2d 11. The qualifications required of judges, the nature of the work that they do, their geographical locations and the places where they are required to do their work furnish an ample basis for the classification which the Legislature has made. Also, we find no substantial discrimination with any of the classes created by the Legislature.

Section 3 of the Constitution which provides that "no grant of exclusive, separate public emoluments or privileges shall be made to any man or set of men, except in consideration of public service" offers no constitutional obstacle to the legislation here under consideration in view of what has been said, nor do we find any constitutional objection in Section 58 which provides that the General Assembly shall neither audit nor allow any private claim against the Commonwealth.

Other arguments were advanced. All have been carefully considered, but none of them have been found sufficient to strike down the Act. The Constitution of Kentucky does not contain any restrictions upon the power of the Legislature, directly or by necessary implication, which prevents the allowance for expenses of state officers. What the Legislature is not forbidden to do by the Constitution it should not be prevented from doing by the courts. The presumption in favor of constitutionality is strong. Nothing advanced by appellant is so compelling as to require a holding of unconstitutionality.

The judgment of the lower court is affirmed. Appellant is directed to comply with the provisions of the Act.

## Appendage.

Section 1. Each Circuit Court Judge of the State shall be paid out of the State Treasury, each month, the sum of $100.00, which sum is hereby declared to be the equivalent of the minimum sum that each judge will expend each month, in the performance of his official duties, for postage, telephone service, supplies, stationery, stenographic assistance, law clerk hire, and books and periodicals. The Commissioner of Finance shall, on the first of each month draw his warrant on the Treasurer in favor of each Circuit Court Judge, for the sum above stated, and the same shall be paid out of the Revolving Fund created by Section 4 of this Act. The sums so received shall be expended by each Circuit Court Judge in his discretion, the manner in which the same shall be applied in payment or reimbursement of such expenses being determined by the Judge.

Section 2. Each Judge and Commissioner of the Court of Appeals who continues, during his term of office, to actually reside at his place of legal residence in the district from which he was elected or appointed, shall be paid, out of the State Treasury, the actual and necessary traveling expenses in going to and returning from the State Capital, and his actual and necessary food and lodging expenses for each day that he remains at the State Capital in the performance of his official duties. Payment shall be made upon the submission of expense statements under oath of the Judge or Commissioner submitting same. Said payment shall be made out of the Revolving Fund created by Section 4 of this Act.

Section 3. In the event any Judge or Commissioner of the Court of Appeals, in order to facilitate the work of the court, and to avoid the expense, delay and inconvenience of frequent travel to and from the place of his legal residence to the State Capital, shall establish a temporary place of abode in the State Capital, or in a place convenient thereto, he shall be paid out of the State Treasury, each month, the sum of $150.00, which is hereby declared to be the reasonable equivalent of the travel, food and lodging expenses which such Judge would incur, in the performance of his official duties, if compelled to travel to and from the place of his legal residence. When a Judge or Commissioner has estab-

lished a temporary place of abode at the State Capital, or a place convenient thereto, he shall certify that fact to the Commissioner of Finance, and payment of the monthly allowance shall then commence and shall thereafter continue so long as the Judge or Commissioner remains in office and continues to maintain an actual place of abode in the State Capital or a place convenient thereto. Said payment shall be made out of the Revolving Fund created by Section 4 of this Act.

Special Judge L. C. Flournoy, Jr. dissenting in part and concurring in part.

I concur in the majority opinion insofar as it holds section 1 of the act under consideration constitutional, and that official expenses can be paid in a lump sum, but I am unable to agree with the majority of the court that sections 2 and 3 of the act are constitutional, basing my dissent mainly upon the ground that the expenses contemplated to be paid to the judges and commissioners of the Court of Appeals are personal expenses, rather than official expenses, the payment of which would constitute additional compensation to these officers and amount to an increase in salary.

This is the first time the legislature has ever attempted to pay officers and employees of the state to come to work at their regular place of employment. It has always been understood that an officer or employee would bear this burden out of his salary, and it is not readily understandable why the legislature would be so solicitous about the judges and commissioners of the Court of Appeals and so indifferent as to the other state officials and employees who must continue to bear the expense of their attendance at their place of employment.

The majority opinion establishes a dangerous precedent and once established would justify every other officer and employee of the state to demand of the legislature similar tratment. It would be better for the legislature, within the limits of the constitution, to enact legislation increasing salaries to an amount commensurate with the duties to be performed in the light of present economic conditions, and to do so directly, instead of under the guise of paying so called ''official expen-

ses,'' which are in their very nature ''personal expenses.''

An examination of the constitution of Kentucky with reference to public officials discloses that by section 114, the judges of the Court of Appeals are required to be residents of the judicial district from which they are elected; by section 112, they shall, at stated times, receive for their services an adequate compensation, to be fixed by law ($5,000, KRS 21.010), which is the highest amount that can be paid under section 246 of the constitution; by section 111, the Court of Appeals shall be held at the seat of government (Frankfort); by section 235 these salaries may not be changed during their term of office.

It is interesting to note that by section 42 of the constitution the compensation of members of the General Assembly is fixed at $5 per day and 15c per mile for traveling from their legal residence to place of meeting of the General Assembly and return, but this compensation may be changed by the legislature, which has been done.

The framers of the constitution recognized that the judges of the Court of Appeals would have to travel from their homes to the seat of government to perform their official duties, as they did that the members of the General Assembly would likewise be required so to do, but they saw fit to provide a mileage allowance for the members of the General Assembly and none for the judges of the Court of Appeals or any other officer mentioned in the constitution, thereby requiring the judges of the Court of Appeals and these other officers to look to their salaries as adequate compensation for the duties to be performed by them at the seat of government, and, in my opinion, the failure of the constitution to contemplate payment of such expenses to the judges or any other officer, except members of the General Assembly, indicates that it was not the intention of the framers of the constitution that such expenses be paid and is a clear inhibition upon the legislature to provide for the payment of such expenses.

It is a universally recognized rule of construction that, where the constitution or statute specifies certain things, the designation of such things excludes all others,

and, in my opinion, the failure of the constitution to make provision for the payment of the expenses and for the other things mentioned in sections 2 and 3 of the act under consideration here, is an inhibition on the power of the legislature to provide for the payment of such expenses.

The emergency clause in the act clearly shows that the intention of the legislature was to grant more pay to the judges and commissioners on account of the fact that the present economic conditions impose an unconscionable burden upon the judiciary of the Commonwealth and creates a threat to the expeditious and impartial administration of justice. Clearly the legislature has attempted to find a lawful way to increase the "take home" pay of the judges of the Court of Appeals and commissioners without denominating its action as an effort to increase the salaries of these officials. The statements of the legislature in the emergency clause, if they be the sentiment of the legislature, are laudable. However, it is too patent to be denied that this "expense law" owes its origin to the fact that these salaries fixed some fifty-seven years ago, are now unfair and wholly disproportionate to the duties of these officers and the conditions under which they must be performed. The remedy for this wrong and injustice lies, however, not with the courts or the legislature, but with the people. On at least two occasions the people have refused to amend the constitution to permit an increase in salaries of public officials over and above the $5,000 limit as provided by section 246 of the constitution and it is earnestly hoped by the writer of this opinion that the amendment to accomplish this purpose will be ratified by the people in the general election in 1949, when such amendment will again be submitted to a vote of the people.

The majority opinion, while supported by the South Dakota cases, is contrary to the decided weight of authority, and since this is a case of first impression in Kentucky, it is the first time, so far as I can ascertain, that the Court of Appeals has refused to follow the decided weight of authority in any case.

I think this case turns upon the difference between official expenses and personal expenses and I am of the

opinion that only "official" expenses can be paid, and that the expenses contemplated by sections 2 and 3 of the act are purely "personal" expenses. If this be true, then they become "perquisites," something gained by place or office beyond regular salary or fee, and constitute additional compensation or increase in salary.

Official expenses are those incurred by an official in the discharge of his official duties, and if he is required to leave his official place of business and go out through the state, the travelling expenses incurred by him, food and lodging, in attendance upon these duties would constitute official expenses, as would office rent, official telephone, stenographer, supplies, and expenses of that character, all of which would be incident to the discharge of his official duties.

The expenses contemplated to be paid for in a lump sum of $100 a month to the circuit judges by section 1 of the act, in my opinion, are official expenses, and it is admitted in this case that they fall into this category, and for this reason can be legally paid.

The judges of the Court of Appeals and commissioners are furnished an office, Stenographer, light, heat, telephone, stamps, stationery, typewriters, library, and every expense which I concede to be official expenses and are at no expense whatever in the discharge of their official duties, nor are they required to ever leave their official place of business at the Capitol and go out into the state in the discharge of their official duties, so that I can conceive of no incidence wherein either the judges or the commissioners would ever incur any official expenses.

Practically all the judges and commissioners of the Court of Appeals have voluntarily established a residence in Frankfort and had been living there for many years at the time the act in question was passed. Section 3 of the act could not have any application to them, even if it were constitutional, because they did not move to Frankfort in order to facilitate the work of the Court or to avoid the expense, delay and inconvenience of frequent trips to and from the place of their legal residences to the State Capitol, and to now pay them the sum of $150 each month on account thereof clearly would constitute a gratuitous payment for personal living expenses. This

section of the act itself deals with the future contingencies and the legislature must not have intended to make this payment of lump sum expenses to the judges and commissioners of the Court of Appeals who were already residing in or near Frankfort at the effective date of the act, and for this additional reason the judges and commissioners of the Court of Appeals now in office and now residing at or adjacent to the capitol could not claim the benefit of this expense allowance.

As hereinbefore stated, the great weight of authority is to the effect that the expenses that may be paid are "official expenses" and not "personal expenses."

In 45 American Jurisprudence 154, section 368, it is written:

"Public officers are very often allowed statutory compensation for expenses incurred by them in the performance of their official duties. Such allowances for expenses are something different from salaries, emolument or perquisite, and prohibitious against changing these do not ordinarily apply to an allowance for expenses. Where, by constitutional provision, the compensation of a designated officer or class of officers for the performance of official duties is fixed, official expenses may be allowed to the officer, *but not personal expenses.*" (My emphasis)

In support of this text the following cases are analogous and support my position and constitute what I think is the weight of authority: Ferris v. Aten, 1947, 318 Mich. 528, 28 N. W. 2d 899; Gallarno v. Long, 1932, 214 Iowa 805, 243 N. W. 719; Dixon v. Shaw, 122 Okl. 211, 253 P. 500, 50 A. L. R. 1232; State v. Clausen, 142 Wash. 450, 253 P. 805; Ashton v. Ferguson, 164 Ark. 254, 261 S. W. 624; Jones v. Hoss, 132 Or. 175, 285 P. 205; Peay v. Graham, 162 Tenn. 153, 35 S. W. 2d 568.

It is interesting to note that the South Dakota case which the majority opinion mainly relies upon, was rejected by the regular Court of Appeals in the case of Rhodes v. Miller, cited in the majority opinion. The dissenting opinion in the case of State v. Reeve, 44 S. D. 568, 184 N. W. 993, cited in the majority opinion, appears to me to be more sound than the majority opinion. In the dissent of Justice Hayes, appearing, 184 N. W. at page 1006, he stated:

"Household expenses, living expenses, whether increased or diminished and regardless of where an official may elect to reside, are in their nature private, individual. These are the personal burdens on every man's shoulders. Payment directly or indirectly of a dollar thereon constitutes compensation, perquisite, or emolument additional to a prescribed salary. This act, being in the main for an unconstitutional purpose, that is, the payment of increased expenses of living at a place other than the legal residence of a judge of the Supreme Court, must wholly fail.

"In the majority opinion it is said that the Constitution of the state does not contain any restrictions upon the power of the Legislature to make allowance for the expenses of the several constitutional state officers who are intervenors in this proceeding. The Constitution (section 2, art. 21) does provide that it shall not be competent for the Legislature to increase the salary of these officers. The Legislature, thus limited, certainly may not go beyond payment of the actual official expenses. Payment to or for an officer of public funds in excess of such expenses, or for private or personal use, is an increase of salary and clearly forbidden. * * * "It is said that the members of the Supreme Court, if they had continued to reside at the place of their legal residence, might have been allowed expenses of travel to and from the seat of government and living expenses while there, as official expenses. Even if this were true, the fact that these judicial officers for years past have elected to live at Pierre and are permanently domiciled there precludes the possibility of classifying their living expenses, or part thereof, as in any sense 'official.' The personal character of living expenses is the same in Deadwood, Aberdeen, or Pierre, and is not affected by mere change of location. * * *

"The effect of this enactment is to increase the compensation of the Supreme Court judges from $3,000 to $4,800 annually, and permit them to pay certain personal expenses themselves. The fact that the compensation probably should be $7,500 per annum instead of $3,000 cannot affect the legal situation or validate this act.

"The Constitution (article 4, sec. 12) requires that state officials perform their duties at the seat of govern-

ment. The compensation, limited to $1,800 per annum, is intended to cover their official services and personal expenses connected therewith. The act awarding $50 per month as expenses of removal to the capital city and increased expenses of living at a place other than his legal residence, and the expense of traveling to and from such legal residence, awards additional compensation and is in conflict with section 2 of article 21 of the state constitution. These defined expenses are not public, not official, not connected with the performance of official duties, but of a purely personal and individual character.''

In State, ex rel. v. Turner, 117 Kan. 755, 233 P. 510, 511, it is stated:

''All legislative expenses may be properly paid. The expenses that may be paid are not those that are incurred by a member of the Legislature because he is at the capital city; they are those that are incurred by him in the performance of his duties. They are legislative expenses, not personal expenses. The distinction between expenses that are legislative and those that are personal is that legislative expenses are those that are necessary to enable the legislature to properly perform its functions, while those that are personal are those that must be incurred by members of the Legislature in order to be present at the place of meeting—expenses for his personal comfort and convenience, which have nothing to do with the performance of his duty as a member of the Legislature. Personal expenses are those incurred for room, meals, laundry, communication with their home, and other things of like character.''

From Gallarno v. Long, supra, an Iowa case, we quote (214 Iowa 805, 243 N. W. 721):

''Personal expenses are for the comfort and convenience of the state official or employee, while at his official residence or abode, and those expenses have nothing to do with the performance of his duty as a state official or employee. Such expenses are those incurred for room, house rent, meals, laundry, clothes, personal communication by telephone, telegraph, or letter, and other things of like character. * * *

''An illustration of such governmental expense may be found in the case of a district judge who maintains

his residence in one county and is required to go to another county in his district to hold court. While travelling to and from, and obtaining board and lodging in, the last-named county, such official is incurring govermental, as distinguished from a personal, expense. So, too, a legislative expense is incurred by the legislators in the performance of their duties. These legislative expenses are the costs necessary to enable the Legislature to properly perform its functions. To illustrate such legislative expense, reference is made to stationery, pencils, ink Codes, stenographers, clerks, telephone and telegraph charges for public business, office rent for state purposes, and other items of a similar nature.''

So I conclude that the expenses incurred by the judges and commissioners of the court of Appeals in attending sessions of the court, the cost of their meals and lodging while in attendance upon the duties of their office at Frankfort are personal expenses as distinguished from official expenses, and the attempt of the legislature to pay these expenses amounts to an increase in the compensation of the judges of the Court of Appeals during their term of office and in excess of the $5,000.00 constitutional limit of salary and is, therefore, violative of both sections 235 and 246 of the constitution.

The argument is made by the appellees that the foregoing conclusion should not affect the right of the legislature to pay these expenses to the commissioners of the Court of Appeals because it has been held that they are not ''officials'' but ''employees,'' and being ''employees'' they are not affected by either of these two sections of the constitution. This contention need not be answered in this case for the reason that it is inconceivable that the legislature would have enacted either section 2 or 3 of the act as to the commissioners alone. Most surely it would not have passed an act paying these expenses and making these allowances to the commissioners without making a similar provision for their superiors, the judges of the Court of Appeals. If that part of each of these sections of this act is unconstitutional as to the judges of the Court of Appeals, that part of the act is vital to the whole, and its invalidity or unconstitutionality strikes down each section of the act in its entirety. The provision for payment of expenses to the judges of the Court of Appeals in each of these

sections is of the substance of the act, and it may be presumed that the legislature would not have passed these sections of the act at all, but for the invalid part, and both of these sections in their entirety are invalid. See Illinois Central Railroad Co. v. Commonwealth, 154 Ky. 332, 334, 157 S. W. 687, 689; State Insurance Board of Kentucky v. Green, 185 Ky. 190, 213 S. W. 218; Commonwealth v. Hatfield Coal Company, 186 Ky. 411, 217 S. W. 125; Neutzel v. Williams, 191 Ky. 351, 230 S. W. 942. Under authority of Commonwealth v. Hatfield Coal Company, supra, section 1 of the act can be upheld and sections 2 and 3 stricken down as unconstitutional, because unconstitutional sections and provisions in a statute may be eliminated from an otherwise valid act, without affecting the validity of such other parts, if the remaining part is not so mutually connected with the invalid part that it would not warrant belief that the legislature intended the act to constitute a whole.

Entertaining the views herein expressed, I regret exceedingly that I cannot agree with the majority of the members of this court that the entire act under attack is constitutional. I realize the conscientious and painstaking consideration which they and the other members of this court have given to this case, and I further realize that the salaries paid to the judges and commissioners of the Court of Appeals are wholly inadequate and that their compensation should be materially increased, but entertaining the views herein expressed, I cannot in good conscience refrain from making this dissent under my oath to uphold the constitution. The only legal way to provide adequate compensation for these public officials is by an appropriate amendment to the constitution.

Special Judge Bernard Coughlin dissenting.

I regretfully dissent from the opinion of the majority in this case as I feel that the entire act violates Sections 235 and 246 of the Constitution of Kentucky and for that reason is invalid.

Section 235 provides as follows:

"Salaries of public officers not to be changed during term; deductions for neglect. The salaries of public officers shall not be changed during the terms for which they were elected; but it shall be the duty of the General

Assembly to regulate, by a general law, in what cases and what deductions shall be made for neglect of official duties. This section shall apply to members of the General Assembly also.''

And Section 246 is as follows:

''Maximum limit on salaries of public officers. No public officer, except the Governor, shall receive more than five thousand dollars per annum, as compensation for official services, independent of the compensation of legally authorized deputies and assistants, which shall be fixed and provided for by law. The General Assembly shall provide for the enforcement of this section by suitable penalties, one of which shall be forfeiture of office by any person violating its provisions.''

In case of Frizzell et al. v. Holmes, et al., 131 Ky. 373, 115 S. W. 246, 248, the Court of Appeals held invalid an act of the Kentucky legislature granting the fiscal court the right to make an appropriation for heat and light used in the jail and the jailer's (a public officer's) residence which he theretofore had been required to pay out of the fees of his office. The court speaking through Judge Carroll held that this was an increase in compensation and violated the constitution and for that reason declared the act invalid saying in part, as follows:

''The third part of the request of the jailer asked a sum sufficient to heat and light the public buildings, including the jail and jailer's residence. Under the law in force when the jailer was elected the fiscal court was not required, or even authorized or permitted, to make an appropriation to heat and light the jail or jailer's residence. He was required to do this out of the fees of his office. It was his duty under the Kentucky Statutes (sections 2226, 2230) to keep the jail clean and comfortably warm, and to furnish prisoners with proper food and lodging during their confinement. If it cost the jailer $100 a year to heat and light the jail and jailer's residence, and the fiscal court had made an appropriation of this amount for that purpose, it is plain that his compensation would have been increased $100. Indeed, if the jailer had demanded of the court $100 for the purpose, we doubt if any one would question the right of the court to refuse the allowance, as it would be presenting to the jailer $100 to which he was

not entitled when elected—in other words, it would be increasing his compensation to the extent of this sum. But the argument is made that the jailer did not ask this appropriation for his use and benefit, but only that the court appropriate a sum sufficient for the purpose named. This is a distinction without a difference. As a practical question, there is no difference whatever between the two propositions. One is a direct violation of the Constitution; the other, an indirect, but equally plain, violation of it. In each instance the jailer is the direct and sole beneficiary of the appropriation. If either request was granted, the jailer would be furnished free, at the expense of the county, light and fuel for which he was required to pay when elected, and his income or compensation from the public would certainly be increased to the extent of the sum the light and fuel would cost him. If a sum sufficient to heat and light the jail and jailer's residence is appropriated, and is placed in the hands of the jailer or any other person to be expended for that purpose, is it not in effect precisely the same as if the fiscal court had purchased and presented the jailer the fuel and lights? Is not the result the same as if the jailer had said to the fiscal court, 'It cost me $100 a year to heat and light the jail and jailer's residence,' and the fiscal court had made an appropriation for that amount? And under the cases before mentioned this would have been in violation of the Constitution. Our construction of section 161 of the Constitution, in harmony with the other opinions construing it, is that the compensation of an officer cannot be, directly or indirectly, increased or diminished during his term of office. Nor can this provision be evaded or rendered nugatory by any plan or scheme to pay to or appropriate for the benefit of an officer public money in excess of the compensation he was entitled to receive when elected to office, or that will increase at the expense of the public the fees, emoluments, or salary of his office.''

Section 7 of the act declaring an emergency to exist and making it effective immediately upon passage and approval, coupled with Sections 235 and 246 of the Constitution and the opinion in Frizzell et al. v. Holmes et al., supra, lead me to the conclusion that the act in question known as House Bill 254 is unconstitutional and invalid.

The result is the same regarding Commissioners of the Court of Appeals because a reading of the act shows the legislative intention to be that the act was to operate on the entire judiciary.

KRS 446.090 provides:

"Severability. It shall be considered that it is the intent of the General Assembly, in enacting any statute, that if any part of the statute be held unconstitutional the remaining parts shall remain in force, unless the statute provides otherwise, or unless the remaining parts are so essentially and inseparably connected with and dependent upon the unconstitutional part that it is apparent that the General Assembly would not have enacted the remaining parts without the unconstitutional part, or unless the remaining parts, standing alone, are incomplete and incapable of being executed in accordance with the intent of the General Assembly."

Appendix

Commonwealth of Kentucky

General Assembly

Regular Session 1948

\* \* \* \* \* \*

House Bill No. 254

\* \* \* \* \* \*

Thursday, February 26, 1948

\* \* \* \* \* \*

The following bill was reported to the Senate from the House, ordered to be printed and referred to the Committee on Kentucky Statutes No. 2.

An Act providing for the payment of certain expenses to the Judges and commissioners of the Court of Appeals and the Circuit Judges of the Commonwealth; imposing a tax on civil suits to further the purposes of the Act; creating a Revolving Fund; providing for the advancement to the Revolving Fund from the General Fund the sum of Seventy-Five Thousand Dollars ($75,-000.00), and its repayment to the General Fund; and declaring an emergency to exist.

Be it enacted by the General Assembly of the Commonwealth of Kentucky:

Section 1. Each Circuit Court Judge of the State shall be paid out of the State Treasury, each month, the sum of $100.00, which sum is hereby declared to be the equivalent of the minimum sum that each Judge will expend each month, in the performance of his official duties, for postage, telephone service, supplies, stationery, stenographic assistance, law clerk hire, and books and periodicals. The Commissioner of Finance shall, on the first of each month, draw his warrant on the Treasurer in favor of each Circuit Court Judge, for the sum above stated, and the same shall be paid out of the Revolving Fund created by Section 4 of this Act. The sums so received shall be expended by each Circuit Court Judge in his discretion, the manner in which the same shall be applied in payment or reimbursement of such expenses being determined by the Judge.

Section 2. Each Judge and Commissioner of the Court of Appeals who continues, during his term of office, to actually reside at his place of legal residence in the district from which he was elected or appointed, shall be paid, out of the State Treasury, his actual and necessary traveling expenses in going to and returning from the State Capital, and his actual and necessary food and lodging expenses, for each day that he remains at the State Capital in the performance of his official duties. Payment shall be made upon the submission of expense statements under oath of the Judge or Commissioner submitting same. Said payments shall be made out of the Revolving Fund created by Section 4 of this Act.

Section 3. In the event any Judge or Commissioner of the Court of Appeals, in order to facilitate the work of the Court, and to avoid the expense, delay and inconvenience of frequent travel to and from the place of his legal residence to the State Capital, shall establish a temporary place of abode in the State Capital, or in a place convenient thereto, he shall be paid out of the State Treasury, each month, the sum of $150.00, which is hereby declared to be the reasonable equivalent of the travel, food and lodging expenses which such Judge would incur, in the performance of his official duties, if compelled to travel to and from the place of his legal residence. When a Judge or Commissioner has established a temporary place of abode at the State

Capital, or a place convenient thereto, he shall certify that fact to the Commissioner of Finance, and payment of the monthly allowance shall then commence and shall thereafter continue so long as the Judge or Commissioner remains in office and continues to maintain an actual place of abode in the State Capital or a place convenient thereto. Said payment shall be made out of the Revolving Fund created by Section 4 of this Act.

Section 4. To provide the revenue necessary to carry out the provisions of this Act, a tax of Three Dollars ($3.00) hereby is levied on each original action in the Circuit Court, commencing with or without original process; on each original action in other courts when the amount in controversy, exclusive of interest and costs, exceeds Fifty Dollars ($50.00); on each appeal to the Circuit or Quarterly Court; on each traverse of forcible entry or detainer; and on each proceeding to revive a judgment. A tax of Five Dollars ($5.00) hereby is levied on each appeal to the Court of Appeals. The funds raised by the aforesaid taxes shall be paid into the Department of Treasury, and shall be covered into a revolving fund which hereby is created and designated the Judicial Expense Account, and from which fund the appropriations hereunder shall be disbursed.

Section 5. In anticipation of the collection of the revenue herein provided for, and to enable the Department of the Treasury to make timely payments under the provisions of this Act, the sum of Seventy-Five Thousand ($75,000.00) shall be advanced from the General fund to the Judicial Expense Account. Said sum shall be repaid to the General Fund at the close of the fiscal year 1948-49 and at the close of each fiscal year thereafter, from surpluses which shall have accumulated in the Judicial Expense Account in excess of Twenty-Five Thousand Dollars ($25,000.00) which shall have accumulated to the Judicial Expense Account at the close of any fiscal year shall be transferred to and become a part of the General Fund of the Commonwealth.

Section 6. Subsections (d) and (h) of KRS 142.010 hereby expressly are repealed.

Section 7. Whereas, present economic conditions are such as to impose an unconscionable burden upon the Judiciary of the Commonwealth, and to create a

threat to the expeditious and impartial administration of justice, an emergency is declared to exist and this Act shall take effect upon its passage and approval by the Governor.

Special Judge J. Woodford Howard dissenting.

The majority opinion, insofar as it upholds the validity of Section 2 and Section 3 of the so-called "Judicial Expense Act," is contrary to the great weight of authority and should not be allowed to become a part of the organic law of Kentucky, no matter how urgent the need for revision of some of its supposedly outmoded limitations and restrictions upon the salaries of public officials. The judgment in favor of the Judges and Commissioners of the Court of Appeals is predicated, and must stand or fall, upon the provisions of Section 3 of the Act. Section 2, under the admitted facts, has no application whatsoever to the present situation of the members of the court and, in fact, has only an indirect bearing upon the issues in suit.

The pertinent provisions of Section 3 read:

"In the event any Judge or Commissioner of the Court of Appeals, *in order to facilitate the work of the Court* and to *avoid the expense,* delay and inconvenience of frequent travel to and from the place of his legal residence to the State Capital, shall establish a temporary place of abode in the State Capital, or in a place convenient thereto, he shall be paid out of the State Treasury, each month, the sum of $150.00, which is hereby declared to be the reasonable equivalent of the travel, *food and lodging expenses* which said Judge would incur, in the performance of his official duties, if compelled to travel to and from the place of his legal residence" (Emphasis mine.)

It is apparent that the allowances so provided contravene the mandatory inhibitions of Section 235 of the Constitution of Kentucky, that: "The salaries of public officers shall not be changed during the terms for which they were elected; * * *." And, since each of the members was and is now drawing the maximum salary of $5,-000 per annum, the additional allowances violate the limitations imposed by Section 246 of the Constitution, that: "No public officer, except the Governor, shall receive

more than five thousand dollars per annum, as compensation for official services, * * *.''

■ The lump sum allowance made by Section Three, considered in light of the present record and its own terms, is not to cover an expense actually incurred. Rather, it is to cover expenses that might, or could have been, tho confessedly *were not*, incurred. It is *in lieu* of an artificial or ostensible expenditure, not an expense in actuality. It was never contemplated, nor intended, by either the framers of the Constitution, or by the people of Kentucky, that any such pseudo expense should be permitted or sanctioned or allowed to operate as an effectual negation of the carefully chosen—albeit plain, simple and understandable—limitations imposed by the above sections of the Constitution upon the powers of the legislative branch of the government.

It is most assuredly true, as pointed out in the majority opinion and frequently held by the courts, that the sovereignty of the people inheres in the legislature and it does not have to look to the Constitution for grant of its authority. But, those very facts serve to emphasize the importance of requiring the most strict and rigid observance by the legislature of such express limitations as the people saw fit to impose upon that body in the exercise of its otherwise unlimited powers. While it may not be required to look to the Constitution for its powers, there is a strict injunction in the Constitution itself against legislative abuse of the limitations upon those powers. Section 26 of the Constitution declares that all laws ''contrary to this Constitution, shall be *void*.'' If the provisions of Sections Two and Three are *contrary* to the Constitution—no matter what the legislature may say about them—they are void. ''The name by which the additional allowance may be called cannot affect what it really is.'' Talbott v. Thomas, 286 Ky. 786, 151 S. W. 2d 1, 4. If void, they are a nullity and cannot sustain the allowances attempted to be made. And, who shall say whether or not those provisions are contrary to the Constitution and, therefore, void? Certainly, not the legislature, thereby making it the judge of the legality of its own actions. The function and duty of determining the validity and meaning of legislative acts rest exclusively with the courts. That is an elementary proposition. It finds full expression

in these excerpts taken from the opinion in Jefferson County v. Jefferson County Fiscal Court, 273 Ky. 674, 117 S. W. 2d 918, 919:

"It seems hardly necessary to say that the reasonableness, wisdom and propriety of an Act of the legislature is not for the courts to determine. That is a right vested in that body of magistracy, and there is neither power nor desire to usurp that right. However, unlike those governments possessing no written constitution, the power of the legislative departments of our national and state governments is not omnipotent. The nature and form of our government imposes limits upon it. The constitution itself is in every real sense the supreme law, the makers thereof being the people themselves in whom, under our political system, sovereignty primarily resides. Though the legislature of a state may exercise all governmental power not denied it and may enact any law not expressly forbidden by the state or the federal constitution, where such authority has been withheld the people have declared that any act transcending that restriction or opposing that supreme law shall be void. It long ago passed from the realm of argument that the judiciary not only has the authority but is charged with the duty of determining whether a legislative act does conflict with the constituion, and if it does, to declare it ineffective.

\* \* \* \* \* \*

"And though, as has been frequently said, a constitution is not static, if its adaption to a given act of the legislature is destructive of its specific principles, or is clearly opposed to its particular requirements or restrictions, such accommodation cannot be recognized."

Nor am I unmindful of the many presumptions and rules of construction suggested in the majority opinion and observed by the courts in favor of upholding the validity of acts of the legislature, unless such acts are clearly in conflict with the constitution. On the other hand, the courts should always stand as the bulwark of the people against any infringement upon their rights, from whatsoever source such attempted infringement may come. These rights and powers of the court are inviolate and should never be surrendered under any pretext, no matter how seemingly urgent it may be. Were

it otherwise, the courts would tend to lose their efficacy, become weakened, and finally impotent to perform their proper functions as an indispensable branch of our government.

So, this statute, like any other statute, must be read and considered dispassionately with the view of ascertaining its true intent and objective. The intent and objective of the present act plainly appear from its terms to be an effort on the part of the legislature to surmount all consitutional obstacles by doing indirectly what is forbidden to be done directly and make provision for salary increases to the members of the court. The very reasons expressed in the act ''in order to facilitate the work of the court, and to avoid the expense, delay and inconvenience of frequent travel''—as well as the recitals in Section 7 of the Act that, ''whereas, present economic conditions are such as to impose un unconscionable burden upon the Judiciary of the Commonwealth, and to create a threat to the expeditious and impartial administration of justice, an emergency is declared to exist''—stamp the Act as anything else than a plan of reimbursement of official expenses. Since each of the Judges and Commissioners, as disclosed by the record, has already established a temporary place of abode in the State Capital, or in a place convenient thereto, and had done so prior to passage of the Act, it seems obvious from the very face of the Act that it was not designed to cover a new situation so as to avoid the expense, delay and inconvenience of frequent travel, but its ultimate purpose was to provide a monthly allowance to the Judges and Commissioners, which allowance is tantamount to an increase in salary. There seems little escape from this conclusion, for the simple reason that the grounds recited in the Act for its passage were and are known to be nonexistent.

The courts are not concluded by mere legislative declarations contrary to the true character of their Act. Addressing this proposition, the court, in an enlightening opinion in the case of Peay v. Nolan, 157 Tenn. 222, 7 S. W. 2d 815, 819, 60 A. L. R. 408, used this language:

''The constitutionality of an act depends on its real character, and on the end designed to be accomplished, and the courts are not concluded by mere declarations,

for in whatever language a statute may be framed, its purpose and constitutional validity must be determined by its natural and reasonable effect.''

In James, Auditor, v. Duffy, 140 Ky. 604, 131 S. W. 489, 490, 140 Am. St. Rep. 404, the court, in exercising its duties in striking down an unconstitutional act, employed this language:

''If the compensation is a salary, the salary must remain the same throughout that official's term, whether or not the scope of his official duties has been increased or lessened. If the compensation be fees, then the same scale of fees must prevail for the same services, and if new duties are imposed with fees attached, the incumbent when the change is made cannot charge for the new duties. The section of the Constitution is inexorable. It admits of no exceptions. It affords no opportunity for evasion by the Legislature or other body. Its purpose cannot be defeated by indirection. It is a complete barrier to change of compensation, whether the salary, scale of fees, or both. It operates upon the office and the official—not upon his duties.''

This language was quoted with approval in Green v. Cohen, 181 Ky. 108, 203 S. W. 1077, 1078, wherein the court further stated:

''Undoubtedly, the provision in the Constitution against the changing of the salary of public officers after their election is mandatory as well as wise, and under no circumstances should the courts suffer or permit any consideration to induce them either to minimize or abrogate the fundamental law of the commonwealth.''

Many other instances may be cited where the Court of Appeals of Kentucky, in the exercise of its proper judicial prerogatives, struck down abortive attempts of the legislature to violate the Constitution, among which may be mentioned the following: Estill County v. Noland, 301 Ky. 204, 191 S. W. 2d 223; Rhoads v. Miller, Commissioner of Finance, 298 Ky. 346, 182 S. W. 2d 248, Sanders v. Talbott, Auditor, 255 Ky. 50, 72 S. W. 2d 758; and Frizzell v. Holmes, 131 Ky. 373, 115 S. W. 246; and the authorities cited in the opinions in those cases.

(2) Furthermore, the declared expenses (in both

Sections 2 and 3 of the Act) include in no small part "food and lodging expenses" while the Judge or Commissioner is at the Capital in the performance of his official duties.

There appears to be no dispute between the parties to this cause; in fact, it is recognized in the vast majority of opinions, that the allowance of *personal* expenses, as distinguished from *official* expenses, would amount to a violation of the Constitution prohibiting a change in salary. The general rule on the subject is thus summed up in 43 Am. Jur., page 154, Section 368:

"Public officers are very often allowed statutory compensation for expenses incurred by them in the performance of their official duties. Such allowances for expenses are something different from salary, emoluments, or perquisites, and prohibitions against changing these do not ordinarily apply to an allowance for expenses. Where, by constitutional provision, the compensation of a designated officer or class of officers for the performance of official duties is fixed, official expenses may be allowed the officer, *but not personal expenses, or expenses unnecessarily incurred.*"

Many authorities sustaining this well recognized rule might be cited, but since there is no dispute about it, it would be idle to do so here.

What, then, are *personal* expenses—and what are *official* expenses?

The answer is to be found in the authorities. The array of well reasoned decisions on the subject are most convincing that the *"board and lodging expenses"* of officials, while at the Capital, whose duties require them to be there, (as Section 111 of the Constitution requires of the Judges of. the Court of Appeals) are *personal,* and not *official,* expenses within the meaning of the rule. The majority opinion in the instant case holds to a contrary view.

The question was presented in the late case of Ferris v. Aten, Auditor General, et al., 318 Mich. 528, 28 N. W. 2d 899, 900 (decided October 13, 1947). The court, in that case, condemned as unconstitutional a statute providing that each member of the legislature "while absent from his usual place of residence while in attend-

ance at the regular or extra sessions of the legislature and while in the discharge of his official duties in the service of the state, be reimbursed for actual xpenses incurred for *room and meals* in the same amounts as are paid to the state officers, for like expenses while absent on business of the state, not to exceed $7.50 per diem.''

The court, in that case, concluded its opinion in the following language:

''(1) By the great weight of authority there is a distinction between legislative or governmental and personal expenses. Those expenses incurred in the performance of official duties as in the Ware case* are allowable, while purely personal expenses are considered as perquisites of office, and being such are forbidden by constitutional provision.

''(2) In State ex rel. v. Turner, 117 Kan. 755, 233, P. 510, 511, it is said:

'' 'All legislative expenses may be properly paid. The expenses that may be paid are not those that are incurred by a member of the Legislature because he is at the capital city; they are those that are incurred by him in the performance of his duties. They are legislative expenses not personal expenses. The distinction between expenses that are legislative and those that are personal is that legislative expenses are those that are necessary to enable the Legislature to properly perform its functions, while those that are personal are those that must be incurred by a member of the Legislature in order to be present at the place of meeting—expenses for his personal comfort and convenience, which have nothing to do with the performance of his duty as a member of the Legislature. Personal expenses are those incurred for rooms, meals, laundry, communications with their homes, and other things of like character.'

''Other jurisdictions in harmony with the above

*The Ware case, alluded to in the above opinion, (being Ware v. City of Battle Creek, 201 Mich. 468, 167 N. W. 891, L. R. A. 1918E, 673), was cited and relied on in the brief filed in this case on behalf of Members of the Court. That case involved an allowance of actual office expenses for a city attorney and the court properly held such expenses to be official expenses.

statement are recorded in the following decisions: Dixon v. Shaw, 122 Okl. 211, 253 P. 500, 50 A. L. R. 1232; Gallerno v. Long, 214 Iowa 805, 243 N. W. 719; State v. Clausen, 142 Wash. 450, 253 P. 805; Ashton v. Ferguson, 164 Ark. 254, 261 S. W. 624; Jones v. Hoss, 132 Or. 175, 285 P. 205; Peay v. Graham, 162 Tenn. 153, 35 S. W. 2d 568.

"(3) The act in question provides that a member of the legislature while in the discharge of his official duties at a session of the legislature shall be reimbursed for actual expenses incurred for room and meals, not to exceed $7.50 per diem. Such an allowance for board and room, if permitted by the act here under consideration, would thereby become a perquisite of the office and as such is prohibited by the Constitution. It, therefore, follows that the act in question is unconstitutional for the reasons above stated."

The majority opinion embraces and follows the contrary doctrine laid down in the two South Dakota cases (McCoy v. Handlin and State v. Reeves) which is diametrically opposed to that announced in most reported decisions, from other states, on the subject. The opinions in the South Dakota cases have been expressly repudiated in some of the decisions from other states and tacitly, if not actually so, by the Court of Appeals of Kentucky in Rhoads v. Miller, 298 Ky. 346, 182 S. W. 2d 248. The dissenting opinion in State v. Reeves, one of the South Dakota cases, is most persuasive and is more consonant with sound reasoning than the majority opinion in that case.

The doctrine announced by the court in the case of Ferris v. Aten, supra, and in the various cases therein cited and reviewed is fundamentally sound and should be adopted and followed in Kentucky. The South Dakota cases should be repudiated as laying down a dangerous innovation, one that should not be allowed to become a part of the fundamental laws of this state through any process of judicial interpretation.

For the foregoing, among many other reasons that might be advanced, Section 2 and Section 3 of the Act are in direct conflict with the Constitution (Sections 235 and 246) and should be declared invalid.

■ Thus far, the Judges and Commissioners have been treated as being in the same attitude. It was argued by proponents of the Act, however, to the effect that the Commissioners are not "officials," but mere "employees" and are not affected by the constitutional limitations as to salary. Whether or not this contention is sound becomes immaterial to the present inquiry for the simple reason that if these sections violate the Constitution and should be held invalid as to the Judges, they must fail the Commissioners also. This is so because the allowances in favor of the Commissioners "are so essentially and inseparably connected with and dependent upon" those in favor of the Judges, for whose primary benefit the Act was passed, that it is apparent the legislature would not have enacted in favor of the Commissioners, without the Judges receiving at least as much compensation. Section 446.090, KRS.

■ The allowances in favor of Circuit Judges made by Section One of the Act were therein declared "to be the equivalent of the minimum sum that each Judge will expend each month, in the performance of his official duties, for *postage, telephone services, supplies, stationery, stenographic assistance, law clerk hire, and books and periodicals,*" (italics mine). Every item so specified is one to be used only in connection with the performance of official duties, as distinguished from a *personal* expenditure, by the Circuit Judges. Such allowance, therefore, clearly partakes of the nature of *official* expenses, and in no wise clashes with the constitutional inhibitions against change or increase in salary above the prescribed limit. The majority opinion appears to be sound, therefore, in so holding.

■ There may be, and undoubtedly are, strong and impelling reasons for increasing the salaries of members of the Court to the point where they will be commensurate with present day costs of living. It appears to be generally conceded that the work of the court has kept abreast of the growth and development of the state and that the cost of living has greatly increased since adoption of the Constitution. No one can gainsay that members of the court should receive compensation for their important work sufficient to maintain them in an atmosphere of dignity and respect incident to their high office. Arguments of this nature, however, are more

properly addressed to the advisability of amending the Constitution so as to permit these things to be done. Until it is amended, its present provisions must be regarded as the supreme law of the state and enforced accordingly, no matter what changes have come about in the amount of services rendered or in living costs.

Entertaining these views, I am constrained to dissent from the majority opinion to the extent that it sustains the validity of Section 2 and Section 3 of the Act.