**M. T. "Tommy" RIDDLE, Appellant,**

**v.**

**Joe EATON, Jr., Appellee.**

Court of Appeals of Kentucky.

Oct. 14, 1969.

Dissenting Opinion and As Modified on Denial of Rehearing Oct. 28, 1969.

Norman L. Wagner, Louisville, for appellant.

Frank E. Haddad, Jr., Louisville, for appellee.

WADDILL, Commissioner.

Appellant, M. T. "Tommy" Riddle, and appellee, Joe Eaton, Jr., were candidates in the May-1969 primary election for the Republican nomination for sheriff of Jefferson County. On the face of the election returns Eaton won the nomination. Riddle then filed this contest action under the provisions of KRS, Chapter 122, alleging, in effect, that he had not violated provisions of the Corrupt Practices Act (KRS, Chapter 123); that Eaton had violated the Corrupt Practices Act and, therefore, he rather than Eaton is entitled to be declared the Republican nominee under the provisions of KRS 122.010. Eaton filed an answer denying Riddle's allegations. After submission of the case for trial the court found, in summary, "that the proof failed to connect Mr. Eaton with any wrongdoing in this case." Judgment was entered which dismissed the contest action and declared that Eaton was entitled to the Republican nomination for the office of sheriff of Jefferson County at the regular election in November, 1969. We affirmed the judgment by order on September 16, 1969.

Riddle contends that the trial court erred in not declaring Eaton's nomination void and in not declaring that Riddle is the Republican nominee. Initially, Riddle urges that Eaton violated the Corrupt Prac-

tices Act by using "misleading and fraudulent" sample ballots that were distributed by Eaton's political friends in Eaton's behalf with his knowledge and consent. In order to properly evaluate this contention, which centers around the alleged "misleading and fraudulent" sample ballots that were circulated prior to the 1969–May primary, we will relate the relevant facts as disclosed by the record.

Prior to the May-1969 primary election, sample ballots were printed and circulated in behalf of a slate of Republican candidates which included Riddle. These slated candidates were endorsed by Lawrence P. Layne, S. Tilford Payne and George B. Berry, who are some of the leaders and officers of the Republican Party in Louisville and Jefferson County and whose names appear at the bottom of these sample ballots. Each of these three men testified that his endorsement of these particular candidates was a personal, rather than an official, endorsement. Apparently, this was due to the fact that the Louisville-Jefferson County Republican Executive Committee is prohibited by party law from endorsing a candidate or slate of candidates in a Republican primary election.

Also on these sample ballots were the names and the pictures of a slate of candidates for various offices, including the name and picture of Riddle for sheriff. At the top of these ballots there appears in large letters: "VOTE TO WIN! SAWYER—SAWYER REGULAR REPUBLICAN OFFICIAL SAMPLE BALLOT." (John Sawyer was a Republican candidate for Mayor and E. P. Sawyer[1] was a Republican candidate for Jefferson County Judge). In the upper right-hand corner of the ballot, in small print, appears the following "disclaimer":[2] "Paid for by Sawyer & Sawyer Campaign Committee 415 West Walnut Street Marshall M. Royce Treasurer."

Three days before the primary election William Siers, a political supporter of Eaton who had obtained one of these sample ballots, decided that he would slate Eaton for sheriff on these ballots instead of Riddle. Siers took that sample ballot to a printing company where he had Riddle's name and picture deleted from it and substituted in its place Eaton's name and picture. Otherwise, the ballot was unchanged. Siers then purchased (and promised to pay for) several thousand of these ballots.

When Siers informed Eaton concerning what had transpired and showed him the sample ballots with Eaton's name and picture on them, Eaton would not agree to their use or distribution because they contained no disclaimer as to their sponsor and because the names of Layne, Payne and Berry appeared on them. Siers then made arrangements to have a disclaimer stamp-printed on these ballots to show the following: "Paid for by W. Siers, 4403 Lynnbrook Drive." The ballots were then taken to a printer for the purpose of removing from them the printed names of Layne, Payne and Berry. In this form the ballots were to be distributed in precincts on primary election day. When these arrangements were complied with some of the ballots were taken to and distributed in the voting places.

Two days before the primary several of the sample ballots that Siers had had printed were brought to the Sawyer-Sawyer Political Headquarters by Elmer Norrington who had obtained them from J. C. Grider. Grider, a political friend of Eaton, had given his friend Norrington a stack of the sample ballots that Siers had had printed and had requested Norrington to stamp the disclaimer on them. When it was learned that some of the ballots had the names of Layne, Payne and Berry on them and that some of these ballots had no disclaimer to show who was having them printed, the

---

1. E. P. Sawyer was killed in an automobile accident on September 23, 1969.

2. "Disclaimer," as used herein is a statement printed on the political advertisement showing who sponsored it.

Sawyer-Sawyer Headquarters called a press conference and the public was informed that anyone distributing sample ballots with Eaton's name and picture on them without a disclaimer, or with the names of Layne, Payne and Berry on them, would be subjected to prosecution. On the same day Eaton held a press conference and informed the public that any sample ballot endorsing him for sheriff without a disclaimer or with the names of Layne, Payne and Berry appearing on them would not be used by him.

■ The trial court found that Eaton had not knowingly permitted any false or fraudulent sample ballots to be used in his behalf. Since the trial court was justified in reaching the conclusion it did under the evidence, this court cannot reasonably say that these findings are erroneous or that Riddle was entitled to judgment in his favor as a matter of law. See Clay, CR 52.01, Comment 8.

■ Riddle next contends that Eaton knowingly permitted "a sticker or pasty" containing Eaton's name to be placed over Riddle's name on some sample ballots that were to be distributed at the polls on primary election day. The only testimony concerning this matter was given by a woman who said that on the night before the primary an unidentified man brought a batch of sample ballots to her home that had a sticker with Eaton's name placed over the name of Riddle. There was no claim by this woman (or anyone else) that Eaton knew about this or had anything to do with it. We dismiss this contention as being unsubstantiated.

Riddle next contends that the trial court erred in not finding that Eaton, or others in his behalf with his knowledge, violated the provisions of KRS 123.030, which reads:

"No person other than a corporation, and no agent of such person on his behalf, shall contribute, either directly or indirectly, any money, service or other thing of value towards the nomination

or election of any state, county, city or district officer who, in his official capacity, is required by law to perform any duties peculiar to such person not common to the general public, or to supervise, regulate or control in any manner the affairs of such person, or to perform any duty in assessing the property of such person for taxation. No such person, and no agent of such person on his behalf, shall pay, promise, loan or become pecuniarily liable in any way for any money or other valuable thing on behalf of any candidate for any such office at any election, primary or nominating convention held in this state. No attorney or other person shall accept employment and compensation from any such person with the understanding or agreement, either direct or implied, that he will contribute to any candidate for any such office, or on his behalf, any part or all of such compensation, towards the nomination or election of such candidate."

■ Siers was a deputy sheriff hired by and under the supervision of county sheriff Joe Eaton, Sr., who is the father of the appellee, Joe Eaton, Jr. Riddle urges that because Siers is a deputy sheriff, Siers is prohibited from contributing anything of value to Joe Eaton, Junior's campaign for sheriff. One of the purposes of KRS 123.030 is to prevent coerced contributions from a person who may be under the dominion or control of a candidate for office. It is primarily for the protection of the employee. The trial court apparently did not believe that Siers was coerced to support Joe Eaton, Jr., for sheriff or that deputy Siers was "required by law to perform any duties peculiar to Joe Eaton, Jr., not common to the general public, or to supervise, regulate or control in any manner the affairs of such person."

■ We do not find sufficient evidence to authorize a finding, as a matter of law, that the alleged activities of Siers and sheriff Eaton were being conducted with the knowledge or by the procurement of

Joe Eaton, Jr. Therefore, we are not convinced that the trial court's finding that Joe Eaton, Jr., had not violated the Corrupt Practices Act is erroneous.

Riddle next contends that Eaton violated KRS 123.040. Siers made a trip to Florida to the National Sheriff's Convention in his capacity as a deputy sheriff after the primary election and received approximately three hundred dollars as expense money. Riddle claims this activity violates KRS 123.040, which reads:

"No candidate for nomination or election to any state, county, city or district office shall expend, pay, promise, loan or become pecuniarily liable in any way for money or other thing of value, either directly or indirectly, to any person in consideration of the vote or financial or moral support of that person. No such candidate shall promise, agree or make a contract with any person to vote for or support any particular individual, thing or measure, in consideration for the vote or the financial or moral support of that person in any election, primary or nominating convention, and no person shall demand that any candidate make such a promise, agreement or contract."

Siers testified that he did not go to Florida as candidate Eaton's guest but that he paid his own and his wife's and childrens' expenses on the vacation part of his trip. He further testified that he received approval from the county sheriff to attend the convention, with his expenses to be paid by the sheriff. We find no reasonable basis upon which to say that the trial court erred in finding that Eaton had not violated the provisions of KRS 123.040. It would be mere speculation to hold that the Siers' Florida trip had been promised and provided as a part of an election deal.

Riddle next contends that the trial court erred in failing to find that Eaton violated KRS 123.110 because an employee of Eaton's father was allegedly discharged after the primary because she did not support Joe Eaton, Jr. KRS 123.110 reads:

"No person shall coerce or direct any employe to vote for any political party or candidate for nomination or election to any office in this state, or threaten to discharge any employe if he votes for any candidate, or discharge any employe on account of his exercise of suffrage, or give out or circulate any statement or report that employes are expected or have been requested or directed by the employer, or by anyone acting for him, to vote for any person, group of persons or measure.

"No corporation organized or authorized to do business in this state shall influence or attempt to influence, by bribe, favor, promise, inducement or otherwise, the vote or suffrage or any employe of such corporation against or in favor of any candidate, platform, principle or issue in any election held under the laws of this state."

Dorothy Ballard was employed by sheriff Eaton prior to the primary and until June 4, 1969, when, according to Mrs. Ballard, sheriff Eaton said: "You are not for me and you weren't for my son, so I am going to have to take you off my payroll." Riddle urges that Mrs. Ballard's testimony supports the conclusion that she was discharged because of her "exercise of suffrage." Mrs. Ballard did not testify whether she voted for appellee Eaton or not. She did not say that sheriff Eaton, or any one acting in candidate Eaton's behalf, tried to coerce her to vote for either Eaton or Riddle. Unless we read something unsaid into her testimony, it merely shows she was discharged after the primary for her personal disloyalty to sheriff Eaton.

In the absence of evidence showing that Joe Eaton, Jr., had been involved in or consented to the alleged coercion of Mrs. Ballard, there was no violation of the Corrupt Practices Act established. It takes something more than surmise to authorize this court to deprive appellee Eaton of his nomination. Since the trial court's finding that candidate Eaton had not violated the

Corrupt Practices Act is entitled to great weight, we are unwilling to disturb it.

Riddle further urges that the trial court erred in not declaring that Riddle was innocent of violating the Corrupt Practices Act. Apparently he desires this court to interpret the meaning of KRS 123.130(1), which he says is "a most confusing statute." It provides:

"All written or printed circulars, advertisements or other statements with reference to any candidate or group of candidates for nomination or election to any public office in this Commonwealth shall include the signature and the address of the writer, or if the same purports to be issued by any committee, organization or other similar association, the same shall include the signatures and the addresses of two of the principal officers of the committee, organization, or association."

Apparently the trial court did not believe it to be necessary to decide the question of whether or not Riddle had violated the Corrupt Practices Act or to interpret the provisions of KRS 123.130(1). Since we are affirming the judgment resting upon the trial court's findings that Eaton had not violated any of the provisions of the Corrupt Practices Act, we, also, decline to decide the question of whether Riddle had violated the Act as that issue is now moot. Therefore, it follows there is no immediate need for us to spell out what the provisions of KRS 123.130(1) mean.

We have considered all the issues and contentions raised by appellant and are now of the opinion that the trial court correctly decided the case.

The judgment is affirmed.

HILL, C. J., and MILLIKEN, STEINFELD and NEIKIRK, JJ., concur.

Dissenting opinion by PALMORE, J., in which OSBORNE and REED, JJ., concur.

PALMORE, Judge (Dissenting).

It is admitted that Eaton knew of, approved, and participated in the dissemination of the spurious sample ballot identified as Exhibit C. The chancellor's finding to the contrary is clearly erroneous and was so conceded in the oral argument held before this court on Riddle's petition for rehearing. This exhibit is a "dead ringer" for the authentic sample ballot prepared and used by the actual Sawyer-Sawyer committee, except that it has Eaton's picture and name in the places in which Riddle's picture and name appeared on the authentic ballot and had cut from it the signatures of the committee which appeared on the authentic ballot. The "disclaimer" on Exhibit C was different also, but for practical purposes the spurious ballot was designed and intended to be so similar to the authentic sample ballot as to deceive the unwary.

There was an authentic Sawyer-Sawyer committee which had filed its organization papers with the Registry as required by KRS 123.075(1). Riddle's name was listed as the choice of that group in the primary for nomination for sheriff.

KRS 123.075(1) provides:

"Each committee organized, in whole or in part, for the purpose of furthering a political candidacy, shall register with the registry, by filing official notice of intention at the time of organization, giving names and addresses and positions of the officers of the organization and designating the candidate or candidates it is organized to support on forms prescribed by the registry."

KRS 123.095(2) provides in part:

"All advertisements, billboards, handbills, paid-for television and radio announcements and other communications intended to support or defeat a candidate shall be *signed* or identified by the words 'paid for by' followed by the name and address of the committee and the treasurer on whose behalf the communi-

cation appears." (Emphasis added.) KRS 123.130(1) provides:

"All written or printed circulars, advertisements or other statements with reference to any candidate or group of candidates for nomination or election to any public office in this Commonwealth shall include the signature and the address of the writer, *or if the same purports to be issued by any committee, organization or other similar association,* the same shall include the signatures and the addresses of two of the principal officers of the committee, organization, or association." (Emphasis added.)

Exhibit C certainly purported to be issued in behalf of and by the Sawyer-Sawyer organization. It was designed to convey that impression. Doubtless it did have that effect, as Riddle was the only candidate at the county level on the Sawyer-Sawyer slate who was defeated in the primary. Exhibit C did not contain the signatures required by KRS 123.130(1) and was in direct violation of that statute.

There are two fundamental themes incorporated in KRS Chapter 123 as respects the legislative effort to curtail corrupt practice in elections. One of these has to do with the matter of reporting financial expenditures; the other relates to responsibility and fairness in advertisement. If KRS 123.075(1) permits the association of persons for the purpose of supporting a group of candidates—and it clearly does—then it is a meaningless statute if a usurper can advertise himself as supported by such a group when in truth he knows that his opponent, not he, is actually supported by the group.

Eaton's position is not enhanced by his claim that he was for the candidates on the Sawyer-Sawyer ticket. The import of his spurious advertisement was that the candidates on the Sawyer-Sawyer ticket were for him when he knew that such was not the fact. His false claim to be a legitimate member of the Sawyer-Sawyer ticket had the added effect of enabling him to take a

"free ride" on the campaign expenditures of that group.

In light of this clear-cut and flagrant violation of the provisions of KRS Chapter 123, it is my view that Eaton's nomination is void as provided by KRS 123.991(2). I would reverse the judgment which holds to the contrary.

OSBORNE and REED, JJ., join in this dissent.