The KENTUCKY MILK MARKETING AND ANTI–MONOPOLY COMMIS-SION, Appellants,

v.

The BORDEN COMPANY and Cedar Hill Farms, Inc., Appellees.

Court of Appeals of Kentucky.

Oct. 24, 1969.

As Modified on Denial of Rehearing June 19, 1970.

Lawrence W. Grause, Deters & Grause, Covington, for appellants.

William B. Gess, Gess, Mattingly, Saunier & Atchinson, Lexington, Morris Weintraub, Charles J. Schear, Newport, for appellees.

Lynn C. Paulson, Gen. Counsel for National Independent Dairies Assn., Washington, D. C., D. Paul Alagia, Jr., Brown, Miller & Alagia, Jack Q. Heath, Louisville, Thomas F. Marshall, Joseph J. Leary, Rudy Yessin, Frankfort, amicus curiae.

OSBORNE, Judge.

This is a declaratory judgment action instituted for the purpose of testing the constitutionality of KRS 260.675 to 260.-760, commonly referred to as the Kentucky Milk Act. The action also seeks to enjoin the Milk Marketing Commission, which is created by the Act, from enforcing its administrative regulations on the grounds that the Act is unconstitutional, thereby rendering the regulations invalid. It is also alleged that even if the Act were constitutional, the regulations are vague and in excess of the delegated power.

The original action was filed on July 23, 1963, by Cedar Hill Farms, Inc., in the Franklin Circuit Court. It sought to enjoin the Kentucky Milk Marketing and Anti-Monopoly Commission from enforcing the Milk Act and regulations promulgated thereunder. Because of the absence of the judge of the Franklin Circuit Court, application was made to the Kenton Circuit Court for a temporary injunction and one was granted by that court on August 13, 1963. This injunction prohibited the Commission from hearing certain specific charges against the Cedar Hill Dairies for alleged violations of the Milk Act. From the record it appears the matter in controversy between Cedar Hill and the Milk Commission was somehow resolved and the case lay in limbo until May 31, 1967, at which time Cedar Hill Farms filed a supplemental complaint which in effect restated the allegations in the old complaint and again attacked the constitutionality of the Act and the regulations of the Commission. This was an action for a declaration of rights and also sought injunctive relief against the Commission to prohibit it from enforcing the Act or regulations passed thereunder. Borden then filed a similar action. These two actions were considered by the Franklin Circuit Court jointly and a single judgment entered disposing of both at the same time.

The judgment of the Franklin Circuit Court was entered on July 19, 1968. Prior to this, on April 23, the trial judge entered an opinion which held the Milk Marketing Act to be unconstitutional as special legislation. He reasoned that since Kentucky had an Unfair Trade Practices Act, KRS 365.020, etc., which in effect regulated destructive competition in the production, manufacture and distribution of all commodities, and since milk was a commodity within the terms of this Act, the legislature having so enacted by a general law could not later enact a specific law dealing with milk. Therefore, the entire Milk Marketing Act constituted special legislation and was unconstitutional. Even though the opinion of April 23, 1968, entered by the Franklin Circuit Court portended the final disposition of the case and all issues then pending before it, the court provided that "counsel for the plaintiff may

tender an order and judgment in conformity hereto, including additional findings of fact as deemed appropriate." Later counsel did tender findings of fact and conclusions of law which were signed by the court on July 19, 1968. In this judgment the court found the following facts, which we have greatly condensed.

1. That the Borden Company was a New Jersey corporation and had been permitted a license as a distributor of milk by the Kentucky Commission.

2. Cedar Hill Farms was an Ohio corporation and had been issued a license as a distributor of milk by the Kentucky Commission.

3. That the Milk Marketing and Anti-monopoly Commission was organized under the statutes and the members of the Commission appointed thereunder.

4. That the individual defendants were duly appointed members of the Commission.

5. That Wendell Butler was Commissioner of Agriculture at the time the action was instituted and that by virtue of this office he was chairman of the Commission.

6. That Milford Foellger is vice-chairman of the Commission and has been on the Commission since August, 1961, and that prior to becoming a member of the Commission and thereafter he was and is president of the Clover Leaf Dairies, Inc., located in Campbell County, Kentucky, and is in competition with the plaintiffs.

7. That J. C. Beckett is a member of the Commission, was appointed in June, 1960, and that prior to 1967, he owned and operated a dairy farm in Pendleton County but no longer owns and operates the farm.

8. That defendant Bruce Strader is now a member of the Commission and was appointed in June, 1966, and that he is a partner in Strader Brothers Dairy located in Barren County.

9. That Lester Rector is a member of the Commission and was appointed in June of 1960; that he is president and principal owner of Sunshine Dairies, Inc., which operates a production plant in Paducah, Kentucky.

10. That A. D. Herndon is a member of the Commission and was appointed thereto July, 1964; that he was and is vice president of Southern Bell Dairy Company of Pulaski County and that he is engaged in competition with the Borden Company.

11. That the Commission promulgated at various times various regulations enumerated in the order.

12. That the members of the Commission contend that they are authorized to enforce the regulations of the Commission.

13. That the purpose of the Milk Marketing Act is to prevent destructive competition in the sale of milk, which might result in the denial to the public of an adequate supply of the product.

14. That the purpose of KRS 260.705 (1) is the prevention of the destructive competition in the sale of dairy products and that this may be fulfilled by a general law, to wit, the Unfair Trade Practices Law, KRS 365.020–365.090.

15. That milk is within the catalogue of commodities or products regulated by the Unfair Trade Practices Law.

16. That the Milk Marketing Act and Regulations under same impose an economic burden upon the milk industry and establishes a special classification for the industry not justifed in view of the Unfair Trade Practices Law.

17. That the Milk Marketing Law imposes criminal sanctions.

18. That the regulations of the Commission exceed the command of the statute from which they derive.

19. That the criminal sanctions of the law and regulations are vague and indefinite.

20. That the law and regulations authorize the execution of discretionary powers by the Commission in the imposition of criminal sanctions, a function not delegable by the legislature under the Constitution of this Commonwealth.

21. That the Commission is not impartial as required by the precepts of due process; that a present majority of the Commission are dairy operators in competition in one degree or another with the plaintiffs.

Following this long and unnecessarily repetitious list of findings of fact, the order then incorporates its conclusions of law as follows:

1. The Act is unconstitutional as special legislation and in violation of paragraphs 24 and 29 of section 59 of the Kentucky Constitution.

2. The regulations of the Commission are in excess of the authority delegated by the legislature.

3. Criminal sanctions imposed by the regulations are vague and indefinite, thereby rendering them unconstitutional as violative of the due process clause of the 14th amendment to the Constitution of the United States.

4. That insofar as the Act authorizes the exercise of discretionary power by the Commission in imposing criminal sanctions, it constitutes an unlawful delegation of legislative power.

5. That because certain members of the Commission are in competition with the plaintiffs, the Commission is not an impartial regulatory agency and, therefore, is an unconstitutional administrative agency violating the requirements of due process.

Following this list of conclusions of law which are nothing more than a rehash of the findings of fact, which are in themselves in large measure conclusions of law, the order continues with the part entitled judgment. This adjudges:

1. The Milk Marketing Act unconstitutional and void in its entirety.

2. That all regulations promulgated by the Commission are void in their entirety.

3. That the Milk Marketing Commission is an unconstitutional body and the acts of the Commission are void in their entirety.

4. That the Commission be promptly enjoined from enforcing the provisions of the Act and the regulations of the Commission.

We realize that it has become a custom because of overwork for the trial courts to permit attorneys to draft findings of fact and conclusions of law. Many times these are submitted to the court by both sides before the court has made a final adjudication of the case. We do not condemn this practice in instances where the court is utilizing the services of the attorney only in order to complete the physical task of drafting the record. However, to the extent that the court delegates its power to make findings of fact and draw conclusions this is not good practice. In any event we see no justification for what obviously took place in this case in permitting the attorneys to clutter up the record with an instrument such as we have detailed above. Especially after the court has indicated by its orders a final disposition of the case. The purpose of a trial is to develop the issues and try them by the introduction of evidence. At the conclusion of the trial, the duty of the court is to enter a final judgment disposing of the issues between the

parties. After this is done and post trial motions disposed of, nothing remains but an appeal. To permit counsel to clutter up the record by filing detailed, lengthy, contradictory findings of fact and conclusions of law, which, as in this case, are designed for no purpose other than an attempt to cover up mistakes that might have been made in the trial can serve no useful purpose but to unduly enlarge, confuse, compound and expand appellate records. This is a practice followed by a large number of courts and attorneys. It increases our burden and does not help their case. What is said here is not meant as personal criticism of the judge or attorneys who tried this case. They were following a widespread practice which we hope to curtail. Even though we are of the opinion the second order added little if anything to the case, for the purpose of this appeal and in order to dispose of all legitimate issues between the parties, we nevertheless will examine the entire record and endeavor to dispose of those issues not only in the first order but the second order also. The issues before us are:

1. Does the Milk Marketing Act constitute special legislation?

2. Is the act void for vagueness or is it an unconstitutional delegation of the legislative and judicial powers?

3. Are the regulations adopted pursuant to the Act void either because of their vagueness or because they exceed the authority granted by the statute?

4. Does the composition of the board violate the requirements of due process?

We will consider the preceding in their respective order. We are of the opinion that the Act does not constitute special legislation as prohibited by section 59 of our Constitution. Section 59 prohibits the general assembly from passing local or special acts concerning certain subjects when a general law can be made applicable. Among these subjects are labor, trade, mining or manufacturing. We have many times held that this particular section of the Constitution does not prohibit the legislature from making reasonable classifications. We have said that where a classification is one made on a reasonable and natural distinction, having a reasonable relationship to the purposes of the Act, it does not run afoul of this section. See Ratliff v. Hill, 293 Ky. 36, 168 S.W.2d 336, 145 A.L.R. 754. We have further said that the fact that a statute discriminates in favor of a certain class does not render it unconstitutional if the discrimination is founded upon a reasonable distinction or if any state of facts reasonably can be conceived to sustain it. Williams v. City of Bowling Green, 254 Ky. 11, 70 S.W.2d 967; Reynolds Metal Company v. Martin, 269 Ky. 378, 107 S.W.2d 251; Second Street Properties, Inc. v. Fiscal Court of Jefferson County, Kentucky, 445 S.W.2d 709 rendered October 10, 1969. We believe the classification in this Act to be reasonable. In any event the fact that a legislative act deals with a special subject does not make it special legislation. All acts must deal with a special subject, such as alcoholic beverages, game and fish, conduct of elections, etc. Regulating monopolies in the marketing of milk constitutes no more or less a special subject than do any of the others. We are not impressed with the argument that the legislature cannot deal with one particular item separately because of the fact that it has dealt with a general subject. This specific question was before the Wisconsin court in Borden Company v. McDowell, 8 Wis.2d 246, 99 N.W.2d 146. That court said:

"The legislature may honestly and reasonably conceive that the prohibition of such practices or the regulation of them as the statute provides will enable smaller or less wealthy wholesalers to compete for the retailers' trade and to continue to function in the economy of the transfer of the product of the dairy farmer to its ultimate conversion and sale in the form of selected dairy products. Re-

spondents (Bordens) make the objection that those regulatory provisions are enacted for the benefit of a class, the 'small wholesalers', and not for the general public welfare. We held this objection was not valid when we said in Kuhl Motor Co. v. Ford Motor Co., 1955, 270 Wis. 488, 71 N.W.2d 420, 55 A.L.R.2d 467, 'The fact that the persons benefited by this regulatory measure are confined to one class of our citizens, auto dealers, does not militate against the same being a legitimate exericise of the police power.'

As the Connecticut Court stated in Amsel v. Brooks, 1954, 141 Conn. 288, 106 A.2d 152, 45 A.L.R.2d 1234, 'A statute which is otherwise within the police power or serves a public purpose is not unconstitutional merely because it incidentally benefits a limited number of persons.'

*While all citizens of the state are entitled to be protected against unfair dealing by others, this does not mean that the legislature must by one sweep prohibit all unfair dealing and cannot proceed piecemeal to remedy particular types of unfair dealing which manifest themselves in particular occupations or industries."* (Emphasis added).

Section 198 of our Constitution specifically requires the legislature of this state from time to time to prevent all trusts, pools, combinations or other organizations, from combining to depreciate below its real value any article upon the market. This section provides:

"Trusts and combinations in restraint of trade to be prevented. It shall be the duty of the General Assembly from time to time, as necessity may require, to en-

act such laws as may be necessary to prevent all trusts, pools, combinations or other organizations, from combining to depreciate below its real value any article, or to enhance the cost of any article above its real value." [1]

In the case of Manning v. Sims, 308 Ky. 587, 213 S.W.2d 577, 5 A.L.R.2d 1154, we held that the legislature was not precluded from enacting special legislation upon the subject because of the fact that there was general legislation stating:

"Legislation which applies to and operates uniformly upon all members of any class of persons requiring legislation peculiar to themselves in a matter covered by the legislation is general and not special or local. Jefferson County v. Cole et al., 204 Ky. 27, 263 S.W. 1114. Classification is within the power of the legislative branch of the government, and so long as classification is not manifestly arbitrary and unjust the courts will not disturb it. Stevenson v. Hardin, 238 Ky. 600, 38 S.W.2d 462; Johnson, Governor v. Commonwealth, 291 Ky. 829, 165 S.W. 2d 820; Shaw v. Fox, 246 Ky. 342, 55 S. W.2d 11."

We take note of the fact that other states, and for many years, have had general unfair trade practices acts and milk marketing acts similar to ours and to the best of our knowledge no court has ever held the two to be inconsistent.

Is the act void for vagueness or is it an unconstitutional delegation of the legislative and judicial powers? Appellees argue that the act is void for vagueness and the trial court's own opinion apparently so held. Appellees complain about nearly every word in the statute. They complain that KRS 260.705(1) (b) which does not allow a

---

[1]. It was held by the Supreme Court of the United States in International Harvester Company of America v. Commonwealth of Kentucky, 234 U.S. 216, 34 S.Ct. 853, 58 L.Ed. 1284, that certain language of the foregoing section violated the 14th amendment to the United States Constitution. This case was decided in 1913. We doubt that the court would so hold today but in any event this ruling does not detract from the validity of this section, as it shows and expresses the intent of the Constitutional Convention on this subject.

distributor to "discriminate in price in the sale of any milk * * * between different towns, cities, municipalities, counties, sections or communities, or portions thereof or locations therein" unless justified by a difference in actual cost of transportation, is vague. They particularly complain about the term "discrimination in price" in the above section. They complain that the prohibition against "any secret rebate" or "unearned discount" in KRS 260.705(1) (c) is too vague. They complain about the term "legal price" in KRS 260.705(2) (d) which makes an exception for prices set to meet a competitor's "legal price." They also complain about many other terms and phrases in the Act. We do not believe the above phrases to be so vague as to be void. We do not really believe that they are that difficult of interpretation, or anymore difficult than many other phrases which have been held clear enough. Second Street Properties, supra; Murphy v. Cranfill, Ky., 416 S.W.2d 363; Kerth v. Hopkins County Board of Education, Ky., 346 S.W.2d 737; Moore v. Northern Kentucky Independent Food Dealer's Association, 286 Ky. 24, 149 S.W.2d 755.

The trial judge apparently based his rulings of vagueness on that provision of KRS 260.705(1) which prohibits any person from engaging in "any marketing practice established to be unreasonable by the commission." Since KRS 260.991 makes a violation of the act or of any rules or regulations of the commission a crime, he apparently concluded that the commission of an act later to be found to be unreasonable by the commission would be punishable as a crime. We do not so interpret this section. We believe the language "established by the commission to be unreasonable" to require that the Commission had established such by regulation or rule prior to the actions for which one is being prosecuted. Under this situation, the person would have warning that his activity was considered unreasonable prior to the time he engaged in it.

Appellees next contend that the act is an unconstitutional delegation of legislative and judicial powers. KRS 260.705(1) prohibits marketing practices "established to be unreasonable by the commission, including, but not limited to," certain practices set out. It is appellees' contention first that "unreasonable" is not a proper standard for delegation to an administrative body if the "standards" test be applied, and secondly, that this act does not have sufficient "safeguards" if that more recent test advanced by Davis in his Administrative Law Treatise, sec. 215, vol. 1, p. 151, and followed by this court in Butler v. United Cerebral Palsy of Northern Ky., Inc., Ky., 352 S.W.2d 203, is applied. We do not agree with either contention. A reading of the entire section makes it plain that any conduct to be prohibited must be "unreasonable" and must be done "for the purpose or with the effect of restraining, lessening or destroying competition or injuring one or more competitors * * *." We believe this sets out a sufficiently clear standard. Ratliff v. Hill, Ky., 293 Ky. 36, 168 S.W.2d 336, 145 A.L.R. 754.

As to the safeguards question, the primary safeguard here is the liberal right of appeal granted by KRS 260.740 with the right of the circuit judge to stay the Commission's order pending appeal. In addition, the Act puts numerous safeguards around the procedures for hearings on an alleged violation. See KRS 260.740 and 260.685(4). We do not find the Act devoid of safeguards. Butler v. United Cerebral Palsy of Northern Ky., Inc., supra.

Are the regulations void because of their vagueness or because they exceed the power granted by the statute? The trial court did not, in its own opinion, hold the regulations void for being vague and in excess of the statutory power. We will discuss these issues briefly.

Appellee's argument that the regulations are vague is based on the same contentions as their argument that the statute is vague.

Since we have held the statute sufficiently explicit, we see no need to belabor the matter.

The argument that the regulations are in excess of the statutory authority is based on several parts of the regulations. First, the regulations omit the clause requiring that an act be done with the purpose or the effect of lessing competition or hurting a competitor. We believe, and the Commission concedes, that this phrase must be read into the regulations.

Secondly, MMC–4 specifically prohibits the giving of various types of discounts on milk and then also prohibits "any other discount or rebate on milk." This is modified by MMC–7 which allows a 3% differential between drop- and full-service prices with a greater differential being allowed if justified by detailed cost figures. The statute prohibits "unearned discounts." Appellees contend that the Commission has thereby prohibited "earned discounts" which the statute allows by implication. We believe a determination of whether such discounts are "earned" or "unearned" requires a great deal of evidence not before us here.

While it is true that there was some evidence before the trial court on this question, taken at a hearing on a temporary injunction, the trial court did not hold a full-blown hearing on the facts but only heard arguments on the constitutionality of the statute.

In view of the complicated factual questions involved, we believe that this matter could more easily be presented by appeal from the Commission after the Commission has had a full hearing on the matter. Since this issue was not reached in this case, we will not pass upon it here nor do we believe that this is a proper case in which to pursue the issue.

The Commission has not zealously enforced these regulations and in its brief declares that it does not intend to until such time as a complaint is filed or the pro-

hibited practices disrupt a marketing area. At such a time with facts thoroughly developed the case would be better presented for determination. If appellees are then threatened with immediate and irreparable harm, they will certainly have access to the courts.

■ The final contention of the parties is that the composition of the Board violates the requirements of due process. We are not impressed with this argument as the manner of selecting the Board by the executive authority from persons nominated by independent groups is completely consistent with the selection of many other administrative boards. The fact that an administrative agency may be composed of private persons and even persons interested in the subject to be regulated will not make the appointment of the Board invalid. 1 Am.Jur.2d, Administrative Law, § 60, p. 857. Many administrative boards are made up of persons interested. For years the Workmen's Compensation Board has consisted of persons connected with labor and others connected with industry. The National Railroad and Adjustment Board is composed of representatives of railroads and unions. This has been held not to violate due process. Slocum v. Delaware, L & W R. Co., 339 U.S. 239, 70 S.Ct. 577, 94 L.Ed. 795. Many times in the makeup of a commission it is desirable to get those people who have a particular interest in the field in which they are to work. See Davis, 2 Administrative Law Treaties 139, (1958), where this principle is recognized:

"It is sine qua non of good administration that it (a commission) believe in rightness and worth of the laws it is enforcing and that it be prepared to bring to the task zeal and astuteness in finding out and making effective those purposes." *Davis*, supra, at 137–138.

Though a board may be made up of those interested in the field generally this does not mean that a member may sit in a proceeding before the board in which he

has a personal interest. Here the rules concerning disqualification, if the proceeding be judicial in nature, would be on a par with those pertaining to judges. See Disqualifications of Members of Boards, 1 Am. Jur.2d, Administrative Law, Disqualifications, § 53 at p. 859, wherein it is stated that the common law rule applicable to the disqualification of judges extends to every tribunal exercising judicial or quasi-judicial functions. The record in this case does not reveal that any member of the Board has failed to disqualify himself in proceedings where he had a personal interest.

The judgment is reversed.

EDWARD P. HILL, Jr., C. J., and MILLIKEN, PALMORE, STEINFELD and REED, JJ., concur.

NEIKIRK, J., not sitting.