Arnold J. LEE as Property Valuation Administrator of Cumberland County, Kentucky and on behalf of others similarly situated, Appellants,

v.

COMMONWEALTH of Kentucky and Kentucky Registry of Election Finance and the Individual members thereof, Appellees.

Court of Appeals of Kentucky.

March 24, 1978.

William M. Newman, Jr., Louisville, for appellants.

Walter C. Herdman, Asst. Deputy Atty. Gen., Frankfort, for Com. of Kentucky.

Allen Prewitt, Jr., Frankfort, for Kentucky Registry of Election Finance.

Before MARTIN, C. J., and HOGGE and WILHOIT, JJ.

MARTIN, Chief Judge.

This is an appeal from a Franklin Circuit Court judgment upholding the statutory prohibition against making campaign contributions of any kind to a candidate for the office of Property Valuation Administrator. Because of the immediate nature of the question presented, on October 13, 1977, we issued an order reversing the judgment of the circuit court and indicated that a full opinion would follow. In this opinion we explain our decision and declare so much of KRS 121.045 as prohibits donations to a candidate for the office of Property Valuation Administrator unconstitutional under Section 59, subsection 29 of the Kentucky Constitution.

The appellant, Arnold J. Lee of Cumberland County, is one of the 120 county Property Valuation Administrators in Kentucky. He was an incumbent PVA and sought reelection in the November, 1977, General Election. As President of the Association of Property Valuation Administrators in Kentucky, he brought this class action suit to challenge a determination by the Kentucky Registry of Election Finance that no candidate for the office of PVA could receive campaign donations from homeowner in the county where he was running. The appellee, the Registry of Election Finance, is an independent agency of Kentucky government, charged with the enforcement of the provisions of the Corrupt Practices Act, KRS 121.015 through 121.990. The Registry, upon the advice of the Attorney General, advised the candidates for the office of PVA that KRS 121.045 prohibited donations from anyone whose property, whether real, personal, tangible, or intangible, might be assessed by a PVA.

In the trial court, appellant, as the representative of all candidates for the office of PVA, filed a declaration of rights proceeding under KRS 418.040. Notice of the filing of the complaint was sent by the clerk of the court to all candidates for the office of PVA in the 1977 election, asking if they wished to be part of the class determination. Only three rejected representation by appellant as part of a class under Rule 23.

In the complaint, appellant alleged that KRS 121.045 was not intended to foreclose all fund raising efforts by candidates for the office of PVA. The trial court found that the Property Valuation Administrator, whose sole purpose is to value property, must campaign for the office without donations from residents of his county.

The statute in issue is KRS 121.045, which provides:

No person other than a corporation, and no agent of such person on his behalf,

shall contribute, either directly or indirectly, any money, service or other thing of value towards the nomination or election of any state, county, city or district officer who, in his official capacity, is required by law to perform any duties peculiar to such person not common to the general public, or to supervise, regulate or control in any manner the affairs of such person, *or to perform any duty in assessing the property of such person for taxation.* . . . (Emphasis added.)

This section of the Corrupt Practices Act has remained virtually unchanged since it was enacted by the General Assembly in 1916. Kentucky was an early leader in legislating control over the conduct of political campaigns. The paragraph quoted above was part of the original legislative directive designated as Section 1565 b–1 of *Carroll's Code of Kentucky.* Over the years this wording remained unchanged and was reenacted and designated as KRS 123.030 when the *Code* was repealed. This designation remained until 1974 when this section was redesignated KRS 121.045, and that designation will be the one referred to throughout this opinion.

The 1916 Corrupt Practices Act was a short statute and was drafted for the elections of that period. The 1974 Corrupt Practices Act, on the other hand, was part of a complete reform program designed for present day elections. As a part of this reform program, the Registry of Election Finance, which had been created in 1966, was given supervisory control over all election financing. While its power to enforce its rules was upheld in *Dempsey v. Stovall,* Ky., 418 S.W.2d 419 (1967), the Registry had struggled for recognition in controlling campaign fund raising and expenditures. The reform program gave the Registry the necessary strength to monitor effectively all of the financial aspects of political campaigns. The penalties for a violation of KRS 121.990 are severe and can result in the voiding of an election.

Just as the election laws and the statutes affecting corrupt practices have changed over the years, so has the office of PVA, or property assessor as he was known in 1916. Effective December 1, 1969, under authority granted by Section 104 of the Constitution, the legislature created the office of Property Valuation Administrator and abolished the office of property assessor. The legislation was intended to professionalize the work of assessing property. To a great extent this laudable goal has been accomplished. A candidate for PVA is tested professionally before he can run for the office, and if elected, he is subject to the strict supervision of the Department of Revenue. *See Department of Revenue v. Turner,* Ky., 260 S.W.2d 658 (1953), KRS 132.370, 132.380 and 132.420. KRS 132.990 describes the specific penalties that can be invoked against the PVA if he fails to execute the duties of his office.

■ Having established this high degree of professionalism in carrying out the duties of PVA, the Corrupt Practices Act would give him no forum to explain his qualifications. The most important step before he can begin his duties is the requirement that he seek the office in a partisan election in his home county. To certify him professionally qualified and then to deny him any avenue to raise funds for his campaign is incongruous. This problem highlights the need for public financing of elections for offices such as PVA, but that is for the legislature to decide, not the courts. The obvious purpose intended by KRS 121.045 was to prohibit bribes, coerced donations from employees, and the payment for votes. *See Brewer v. Compton,* 276 Ky. 53, 122 S.W.2d 1024 (1934); *Riddle v. Eaton,* Ky., 447 S.W.2d 47 (1969). These were the problems that faced the Commonwealth in 1916. There is no legislative history to suggest that the interpretation advanced by the Registry was intended by the legislature when it enacted the 1974 election reform program.

In reviewing the constitutionality of the Federal Election Campaign Act of 1971, as amended in 1974, the Supreme Court in *Buckley v. Valeo,* 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976), stated:

The Act's contribution and expenditure limitations operated in an area of the most fundamental First Amendment activities. Discussion of public issues and debate on the qualifications of candidates are integral to the operation of the system of government established by our constitution.

and further:

It can hardly be doubted that the constitutional guarantee, [of freedom of speech], has its fullest and most urgent application precisely to the conduct of campaigns for political office. *Monitor Patriot Co. v. Roy*, 401 U.S. 265, 272, 91 S.Ct. 621, 625, 28 L.Ed.2d 35 (1971).

While the court in *Buckley v. Valeo, supra*, proceeded to uphold the validity of the Act's contribution limitations, 18 U.S.C. § 608(b), the court stated:

. . . [T]he primary First Amendment problem raised by the Act's contribution limitations is their restriction of one aspect of the contributor's freedom of political association. The Court's decisions involving associational freedoms establish that the right of association is a "basic constitutional freedom" *Kusper v. Pontikes*, 414 U.S. [51], at 57, 94 S.Ct. [303], at 307, 38 L.Ed.2d 260, that is "closely allied to freedom of speech, and a right which, like free speech, lies at the foundation of a free society." *Shelton v. Tucker*, 364 U.S. 479, 486, 81 S.Ct. 247, 251, 5 L.Ed.2d 231 (1960). See, e. g., *Bates v. Little Rock*, 361 U.S. [516,] [518], 522–523, 80 S.Ct. 412, 416, 4 L.Ed.2d 480 (1960); *NAACP v. Alabama*, 357 U.S., at 460–461, 78 S.Ct., at 1170–1171; *NAACP v. Button*, 371 U.S. [415], at 452, 83 S.Ct. [328], at 347, 9 L.Ed.2d 405 (Harlan J., dissenting). In view of the fundamental nature of the right to associate, governmental "action which may have the effect of curtailing the freedom to associate is subject to the closest scrutiny." *NAACP v. Alabama, supra*, 357 U.S. [449], at 460–461, 78 S.Ct. [1163], at 1171, 2 L.Ed.2d 1488.

■ Our State Constitution § 1 and § 8 secures the right of free speech similar to that protected by the First Amendment to the Constitution of the United States. Further, the legislative intent of the Kentucky Corrupt Practices Act is similar to that of the Federal Election Campaign Act. That purpose is to guard against the reality or appearance of corruption in the election process, and to equalize the relative ability of all voters to affect the outcome of elections. *See Buckley v. Valeo supra*. It was on this former legislative rationale of removing any possible inference of impropriety in the election of a Property Valuation Administrator, that the trial court denied the right to solicit campaign funds because of KRS 121.045. In reading the Corrupt Practices Act we cannot discern a compelling state interest or a legislative intent to deny citizens of a particular county such a basic right as supporting the candidate of their choice for an elected county office. The result of such a policy would be to severely restrict the availability of candidates for the office of Property Valuation Administrator. With no campaign funds available, the voting public would be less informed and, under the decision of the trial court, possibly totally uninformed as to the qualifications of the candidates for the office of PVA. Such a prospect is hardly consonant with the "profound national commitment to the principle that debate on public issues should be uninhibited, robust and wide-open." *New York Times Co. v. Sullivan*, 376 U.S. 254, 270, 84 S.Ct. 710, 721, 11 L.Ed.2d 686 (1964).

■ Section 59 of the 1891 Constitution of Kentucky prohibits any law that appears to be special legislation, or is intended to treat one group of citizens differently than another group. Specifically, subsection 29 prohibits the enactment of a special law where a general law could be made applicable. The legislature is not prohibited from making reasonable classifications. *Kentucky Milk Marketing and Anti-Monopoly Commission v. Bordon Co.*, Ky., 456 S.W.2d 831 (1970). However, a classification based upon purely artificial, arbitrary, or fictitious conditions is unreasonable and will not be permitted. *Reid v.*

**638**

*Robertson,* 304 Ky. 509, 200 S.W.2d 900 (1947). We, therefore reluctantly declare unconstitutional so much of KRS 121.045 as prohibits donations to the election campaigns of candidates for the office of Property Valuation Administrator by persons whose property he may assess.

As ordered on October 13, 1977, the judgment of the Franklin Circuit Court is reversed.

All concur.