RENDERED:  OCTOBER 1, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-1083-MR

JESSICA INGRAM                                                        APPELLANT

APPEAL FROM OLDHAM CIRCUIT COURT
v.        HONORABLE DOREEN S. GOODWIN, JUDGE
ACTION NO. 11-CI-00376

CHAD INGRAM                                                            APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  JONES, MAZE, AND L. THOMPSON, JUDGES.

MAZE, JUDGE:  Jessica Ingram (Mother) appeals from a post-decree judgment of

the Oldham Family Court which awarded appellee Chad Ingram (Father) equal

parenting time and denied her motions for the entry of domestic violence orders.

We affirm.

Unfortunately for the child who is the focus of this appeal, both pre-

decree and post-decree litigation concerning him is extensive.  The parties married

in 1998 and have one child born in 2010 (the child).  In March 2011, the Oldham Family Court entered a domestic violence order (DVO) which required Father to have no contact with Mother; permitted him only three hours weekly parenting time with the child on Sundays; required him to remain 200 feet away from Mother; required him to vacate the marital residence; and required him to enroll in an anger management course.  It is not clear from the record precisely what precipitated the entry of the DVO.  In April 2011, Father filed a petition for dissolution of the parties' marriage.

In May 2011, the family court ordered a custodial evaluation to be performed by a court-approved doctor and expanded Father's parenting time with the child, increasing his Sunday visitation from three to five hours and ordering additional weekly parenting time from 6:30 p.m. Wednesday until 8:15 a.m. Thursday morning.  The parties completed a custodial evaluation with Dr. Jennifer Cebe during the summer of 2011, after which Dr. Cebe filed an evaluation which included the following recommendations:  that the Court delay designation of a permanent custodian of the child for one year; that Father's visitation with the child be expanded to one overnight per week, every other weekend, and half of holidays; that all exchanges of the child occur at an exchange center; and that the parties return for an updated evaluation in one year.  Thereafter, in December

2011, the family court allowed the previously-entered DVO to expire and adopted Dr. Cebe's proposed parenting schedule.

After completing a second custodial evaluation in November 2012, Dr. Cebe advised the family court of her opinion concerning the parties' interactions regarding the child:

> The two biggest obstacles from this evaluator's perspective will be [Mother's] unwavering conviction, in spite of neutral evidence to the contrary, that [Father] is at high risk to sexually abuse [the child], and [Father's] over-focus on his "rights as a parent" viewing situations from a child-focused basis at times. [Mother's] significant fears may give rise to behaviors that she perceives as protective on her part, but in fact become damaging to [the child] if they endanger the father/son attachment relationship in a situation where such a disruption is unwarranted. She also runs the risk of losing credibility and not being believed if a situation arose in the future that truly met criteria for abuse/neglect. [Father] feels [Mother] has not respected, even undermined his rights as [the child's] father and that has led to some rigidity about practicing his parenting time. At times that [the child] might benefit from not making the transition from home to home, such as when he is ill, [Father] had become angry and defensive. That may lead to other's perceptions that he is not prioritizing [the child's] needs. Both parties must consider what their negative contributions to the situation may be and must be willing to work on those issues so that [the child] does not pay the price for adult issues.

The family court ultimately entered a decree dissolving the parties' marriage in May 2013. In its findings of fact and conclusions of law, the family court granted Mother and Father joint custody with Mother being designated the primary

residential custodian. Father was granted parenting time every other weekend, every Wednesday night, and every other Thursday night when he did not have the child for the weekend.

In July 2018, Father moved to hold Mother in contempt for her unilateral decision to suspend his parenting time. At the October 2018 hearing conducted on the contempt motion, Mother testified that she had suspended Father's parenting time because she suspected Father had abused the child. The family court thereafter entered an order compelling Mother to abide by the parenting schedule while it took Father's contempt motion under submission. Because Mother refused to comply with the order to resume Father's parenting time, Father filed a second contempt motion three days after entry of the family court's order. After a hearing on the second contempt motion, the family court ultimately entered a January 2019 order holding Mother in contempt for her willful violation of court orders. The family court specifically found Mother had refused to comply with its order to resume parenting time despite the fact that an investigation by the Cabinet for Health and Family Services found the abuse allegations to be unsubstantiated and the fact that it had advised that the normal parenting schedule should be resumed. Accordingly, the family court awarded Father twenty-five days of make-up parenting time, as well as $1500 in attorney's fees which was to be paid within thirty days of the date of the order. Mother's

failure to comply with this order prompted yet another contempt motion in April 2019.

In May 2019, the family court entered an order memorializing the parties' agreement that Father would withdraw his motion for contempt upon Mother's agreement to pay Father's accrued attorney's fees in the amount of $3,380 and noting that the hearing scheduled for July 2019 would still be conducted. After that hearing, the family court entered another agreed order concerning Father's entitlement to make up twenty-five days of parenting time. Review of the record indicates that the orders at issue in this appeal appear to have been precipitated by Father's December 2019 motion for equal parenting time. In that motion, Father alleged that since entry of the July agreed order the parties had been exercising equal parenting time and that the child was doing markedly better in school, among other things. The family court set the matter for a March 5, 2020 hearing.

On February 27, 2020, Mother filed a petition for entry of an emergency protection order (EPO) and DVO on behalf of the child which was denied on its face by the Oldham Family Court on the same date at 12:57 p.m., without conducting a hearing. At the beginning of the March 5, 2020 hearing on Father's motion for equal parenting time, the family court was informed that after its denial of Mother's February 27, 2020 petition for a DVO, Mother had filed a

virtually identical petition later that same day as action No. 20-D-500617-001 in Jefferson Family Court. Division 10 of Jefferson Family Court had set the matter for a hearing on March 10, 2020. The Oldham Family Court then proceeded with its March 5 hearing and entered the following calendar order on March 6, 2020:

> The parties were before the Court with counsel on 3-5-20, for a hearing on Petitioner's [Father's] motions to modify parenting time and pick up. The following witnesses testified: Ann Lubbers, Cabinet; Chad Ingram [Father]; Christina Brazzell, Petitioner's spouse; Lauren Ganote, therapist; Brittany Kaatz, The Brook therapist and testimony was started from Claudia Crawford, therapist. The Court determined that it was inappropriate to go forward with a therapist that had minimal contact with the child plus it was not agreed on by the parties. The remaining testimony shall be from Jessica Ingram [Mother]. This matter is continued to March 13, 2020, at 9:00 am. In addition, as [it is] anticipated that the EPO filed by the Respondent in Jefferson County shall be transferred to Oldham County and heard at that time. The Court appoints Dr. Ann Hammon as the child's therapist. The parties are to immediately contact Dr. Hammon to set up appointments for self and child. Her fee shall be pro-rated between the parties 28% Petitioner and 72% by Respondent.

On April 23, 2020, the Oldham Family Court entered an order directing that the parties shall have joint custody and equal parenting time, without designation of a primary residential parent, and denying and dismissing Mother's petition for the EPO and DVO transferred to Oldham Family Court from the Jefferson County proceeding. By subsequent order entered on August 27, 2020, the family court reiterated the findings in its previous order, added additional findings, and denied

-6-

Mother's motion to alter, amend, or vacate its order of April 23, 2020. This appeal followed.

Mother advances three issues in support of her contention that the orders of the family court are erroneous: 1) that the denial of her motion for an EPO is erroneous; 2) that the modification of the parenting schedule is erroneous; and 3) that it was error to adopt findings of fact and conclusions of law prepared by Father's counsel. We perceive no reversible error in any of the arguments pressed for reversal.

As an initial matter, we reiterate the familiar standard by which appellate courts review custody awards set out in *B.C. v. B.T.*:

> In reviewing a child-custody award, the appellate standard of review includes a determination of whether the factual findings of the family court are clearly erroneous. A finding of fact is clearly erroneous if it is not supported by substantial evidence, which is evidence sufficient to induce conviction in the mind of a reasonable person. Since the family court is in the best position to evaluate the testimony and to weigh the evidence, an appellate court should not substitute its own opinion for that of the family court. If the findings of fact are supported by substantial evidence and if the correct law is applied, a family court's ultimate decision regarding custody will not be disturbed, absent an abuse of discretion. Abuse of discretion implies that the family court's decision is unreasonable or unfair.

182 S.W.3d 213, 219 (Ky. App. 2005) (citations and footnotes omitted). Similarly, with respect to orders of protection, this Court held in *Caudill v. Caudill*, that while

"domestic violence statutes should be construed liberally in favor of protecting victims from domestic violence and preventing future acts of domestic violence," appellate courts accord much deference to decisions of the family court, but will not "countenance actions that are arbitrary, capricious or unreasonable." 318 S.W.3d 112, 115 (Ky. App. 2010) (citations omitted).

Applying these principles to the decisions of the family court in question here, we find absolutely no basis upon which we might disturb its findings and conclusions. First, concerning the denial of Mother's EPO and DVO, the family court specifically stated:

> The Court denies [Mother's] Petition for entry of a Domestic Violence Order and the Petition is dismissed. A separate Order in the "D" case was entered dismissing same. The Court has reviewed the Petition for entry of a Domestic Violence Order filed in Jefferson County and the Petition [for] entry of a Domestic Violence Order filed in Oldham County both on February 27, 2020. This Court denied the entry of a Domestic Violence Order in the latter case. The Petition contains facts that are almost identical in the first petition for which relief was denied. Furthermore, the Petitions (both in Oldham County and Jefferson County) are replete with hearsay evidence, statements that are attributed to the child. The child was not called as a witness by [Mother] in the Domestic Violence part of the hearing. [Mother] is not a believable witness. The Court heard no additional evidence warranting entry of the requested order.

Nevertheless, Mother argues that the family court's decision is an abuse of discretion because the statements attributed to the child were corroborated through the testimony of Ms. Ann Lubbers, Ms. Lauren Ganote, and Ms. Brittany Kaatz.

Prior to addressing the merits of Mother's contention, we consider Father's threshold position that Mother's failure to directly appeal from the orders in the Oldham Family Court's "D" domestic violence cases precludes our review. Father posits that the present appeal from action No. 11-CI-00376 addresses only post-dissolution proceedings including the child custody issues which have arisen since the entry of the dissolution decree. Mother's February 27, 2020 petitions for entry of an EPO and DVO were addressed in Oldham County action No. 11-D-00026-003 and were denied on their face. After the petition filed that same date in Jefferson Family Court was transferred back to Oldham County, it was assigned action No. 11-D-00026-004. Thus, Father maintains that Mother's failure to appeal from the orders entered in action Nos. 11-D-00026-003 and 11-D-00026-004 precludes her from raising the EPO and DVO issues in this separate post-dissolution child custody case. We agree.

A thorough search of the record in this appeal discloses that none of the EPO or DVOs in question were filed in action No. 11-CI-00376. Thus, neither the exact nature of the allegations nor the evidence offered in support of them are available for our review. The mere fact that the family court referenced entry of

orders denying the EPOs and DVOs in the respective "D" cases is an insufficient basis for conferring jurisdiction to allow review of those orders in this appeal. Accordingly, this Court is without jurisdiction to review issues surrounding the denial of the EPOs and DVOs in action Nos. 11-D-00026-003 and 11-D-00026-004.

Next, Mother insists that the family court abused its discretion in granting Father's motion for equal parenting time. As argued in his motion, Father had been exercising equal parenting time with the child for almost six months due to the make-up parenting time ordered because of Mother's willful disregard of its previous time-sharing order. In its March 2020 hearings, the family court heard the testimony of Ann Lubbers, Oldham County Child Protective Services investigator; Lauren Ganote, the child's therapist at The Family and Children's Place; and Brittany Kaatz, social worker at The Brook. After listening to the testimony and in fact questioning the witnesses, the family court found that the testimony failed to support Mother's contentions regarding abuse. In its order on Mother's motion to alter or amend its previous judgment, the family court reiterated its findings that Mother was a major source of information to the therapists and the Cabinet worker. Ms. Lubbers stated the she had interviewed the child twice and was unable to substantiate Mother's allegations. Ms. Ganote admitted that Mother had led her to believe that she was the custodial parent and

the Father was limited to visitation. In addition, Ms. Ganote testified that Mother had brought the child for therapy in August 2019 concerning sleeping problems and that Mother's report of the child's alleged homicidal ideation regarding burning down Father's house was not raised until December 2019, the same time that Mother reported that Father was attempting to have increased time with the child. Finally, Ms. Kaatz's testimony focused upon the child's admission during his time at The Brook that Father had touched him in an area that his bathing suit would cover. On cross-examination, Ms. Kaatz admitted that the bathing suit area would be the area involved in a spanking and that she did not explore the child's admission further because he did not want to talk about it.

Like the family court, we find the timing of the new allegations of abuse to be suspect, arising only after Father filed his motion to amend the time-sharing order to provide for equal parenting time with the child. Absent a determination that the family court's findings of fact are clearly erroneous, or not supported by substantial evidence, this Court must defer to the family court's judgment because it is in the best position to evaluate the testimony and to weigh the evidence. Under such circumstances, an appellate court should not substitute its own opinion for that of the family court. *B.C. v. B.T.*, *supra*.

Rather than undermining the family court's factual findings, review of the record confirms that its judgment cannot be said to be unreasonable or unfair.

To the contrary, our review of the record convinces us that equally shared parenting time is in the child's best interest.

In this regard, we cite the April 30, 2019 report of Amanda Warren,[1] Social Services Clinician for the Cabinet for Health and Family Services, who conducted an investigation following Mother's petition for an EPO alleging sexual abuse of the child by Father. We find the following portions of her report to be particularly relevant to the child's best interests:

> [The child] further reported to this worker that the only time his father has asked him to show his butt was to see if there was a mark or injury, most recently when he was 5 years old.

> In addition, this worker went over safety questions with [the child] at both parents' homes. [The child] denied ever feeling unsafe or scared while at his father's home but did say he felt unsafe at his mother's home because she spanks and smacks him. When further assessing, he reported that she has only done that one time recently which was reported in February 2019. [The child] went on to share that on a scale of 1-10 (with 1 being the least safe and 10 being the most safe), he felt 8/10 safe at his dad's and 1/10 safe while at his mom's. When asking him to elaborate, he reported he didn't know why he felt that way.

> Later that day, following the interview, this worker spoke with [Mother] and shared that [the child] did not make any concerning disclosures about his dad during the interview; therefore, the Cabinet is not going to restrict

---

[1] We note that this report was filed in the record in a sealed envelope with a handwritten designation at the bottom stating that it was not part of the public record. There is no indication that this report was ever ordered sealed.

contact between the two of them. [Mother] did not appear to be happy and admitted to asking [the child] questions about his interview with this worker when he got home from school, further stating that [the child] did not tell this worker "everything." This worker did not provide [Mother] with details about the interview or all the questions that were asked; however, she immediately concluded that this worker did not ask the right questions. [Mother's] response suggests she was not satisfied with the outcome of the interview and continued to believe [the child] had been abused despite him stating otherwise.

[Mother] contacted law enforcement about this report and Crimes against Children's Unit ultimately became involved. A forensic interview was conducted with [the child] at the Child Advocacy Center and it was observed by a detective (Detective Baker). The detective contacted this worker following the interview stating that the child denied any sexual abuse; however, he did report that his father told him to video tape himself on his electronic device where the videos were found. This worker notes that is not what the child initially reported, but is what the mother initially reported the child said. This worker also notes that the child said (during the forensic interview) that the Judge might make it to where he can't go back to his dad's again and stated that he wants to go back to his dad's. It is unknown where [the child] got such information as his mother denies it came from her.

. . .

This worker shared with [Mother] that [the child] provided no information during either interview that suggests he has been sexually abused or is at risk of sexual abuse. [Mother] continued to be argumentative and made the comment that her son must have to be in a body bag before anyone does anything. [Mother's] response and preposterous behavior is highly concerning.

-13-

> This worker pointed out to [Mother] that it appears she wants her son to be a victim of abuse due to not being relieved or satisfied that he made no disclosures. She continues to say that [the child] is not telling everyone what he is telling her. It appears that [Mother] believes everyone is wrong but her.
>
> Based upon having no corroborating evidence to support the allegations, the Cabinet is closing its case as Unsubstantiated.

In sum, this record is replete with substantial evidence supporting the findings of the family court. There is absolutely no basis upon which we might disturb its judgment concerning equal parenting.

Finally, Mother complains that the family court improperly delegated its fact-finding authority to Father's counsel. It is undisputed that the family court delegated the clerical task of drafting its findings and conclusions to Father's counsel. However, it is abundantly clear from the family court's attentive engagement at the hearings and its findings from the bench that the proposed findings and conclusions reflect the stated decision of the court. In addition, in response to Mother's motion to alter, amend, or vacate, the family court entered fourteen pages of additional findings and conclusions. In our view, any misgivings Mother may have had that the court improperly delegated its fact-finding function should have been put to rest by entry of that order. The delegation of the clerical task of drafting findings and conclusions in this case falls squarely within the analysis our Supreme Court provided in *Bingham v. Bingham*:

-14-

Our concern here, as in *Milk Marketing*, [*Kentucky Milk Marketing & Anti-Monopoly Commission v. Borden Company*, 456 S.W.2d 831 (Ky. 1969)], *supra*, is that the trial court does not abdicate its fact-finding and decision-making responsibility under CR 52.01. However, the delegation of the clerical task of drafting proposed findings of fact and conclusions of law under the proper circumstances does not violate the trial court's responsibility.

Careful scrutiny of the record reveals that the court was thoroughly familiar with the proceedings and facts of this case. The record indicates the trial judge prudently examined the proposed findings and conclusions and made several additions and corrections to reflect his decision in the case.

628 S.W.2d 628, 629 (Ky. 1982). There was absolutely no error in the drafting of proposed findings by Father's counsel in this case.

Accordingly, the judgment of the Oldham Family Court is in all respects affirmed.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Louis P. Winner
Sidney M. Vieck
Louisville, Kentucky

BRIEF FOR APPELLEE:

James L. Theiss
James Daniel ("J.D.") Theiss
LaGrange, Kentucky